*28 OPINION OF THE COURT
Chief Judge Wachtler.
Defendant was convicted, after a jury trial, of two counts of murder in the second degree (Penal Law § 125.25 [1], [3]). The Appellate Division reversed the judgment of conviction and ordered a new trial, holding that the trial court had improperly delegated a judicial function to a court officer when, during jury deliberations, the court directed the court officer to inform the jurors that they were going to be sequestered for the evening and to take them to dinner and a hotel. The jurors were thus sequestered without being instructed by the court that they should not discuss the case among themselves or with anybody else during the recess.
While we do not approve of this procedure, on this record the court’s failure to so instruct the jurors does not require a new trial. Accordingly, we reverse the order of the Appellate Division and reinstate the judgment of conviction.
The charges against defendant stemmed from the beating and strangulation death of a 61-year-old man, an acquaintance of defendant and his sister. The trial lasted approximately a week and a half. The court’s charge was delivered on a Monday morning, following a weekend recess, and the jury retired to deliberate at 11:20 a.m. that day. That afternoon, pursuant to the jury’s request, the court repeated its instructions concerning the definition of the charges. Deliberations resumed at 3:40 p.m. The jury was sequestered sometime after 5:00 p.m., and they reached a verdict a half hour after resuming deliberations the following morning.
When the court reconvened to receive the verdict, defendant’s attorney expressed his concern that, because the jury had deliberated such a short time that morning, the verdict may have been the product of unauthorized deliberations during the sequestration period. Defense counsel acknowledged that he had been informed that the jury was "just going to be sent out”, but now protested that the court should have instructed the jury to stop deliberations before sequestration. The court explained that its practice was to sequester the jury without such an instruction, because
"when a Judge makes a decision to sequester a jury for the evening, the decision has been made, the jury has worked hard enough for the day, and they should no longer have to stay around the courthouse. They should then be taken to dinner *29 and relax, as far as I’m concerned, as soon as possible. If I have to call the lawyers — I would not communicate, obviously, to the jurors anything without the lawyers being present. I would have to reach out for the attorneys, who knows where they are * * *. The defendant would have to be brought up. I would say — it would be fair to say it would occasion a delay of at least from fifteen minutes to another half an hour just to tell the jury good night and stop deliberating.”
The court asked the court officer to state on the record what he said to the jurors prior to their sequestration. The court officer stated that he told the jurors to "cease all deliberations” and that they were going to be taken to dinner and sequestered for the evening. Upon further questioning from the court, the court officer stated that the jurors had not discussed the case during dinner or breakfast and that the rest of the time was spent in pairs or individually in their hotel rooms, with no opportunity for joint deliberations. The court officer also noted that all jury supplies — verdict sheets, paper, etc. — had been secured in the courtroom before the jury left for the evening.
Based on this information, the court found no indication that the jury had deliberated during the sequestration period. The court noted that the jurors’ request for clarification of the definition of the various charges shortly before their sequestration indicated to him, based on his experience, that the jury was close to a verdict at that time. Thus, he did not consider it unusual or indicative of improper overnight deliberations that the jury had reached a verdict so quickly the next morning. The court concluded, "So that’s the Court’s reaction to it. I don’t think you made any kind of motion. I don’t know what I am supposed to do at this point, other than to say that’s my reaction to it.” Defendant’s attorney said nothing further. The court thereupon called in the jury, which rendered its verdict finding defendant guilty of intentional murder and felony murder.
On defendant’s appeal, the Appellate Division determined first that the verdict was supported by legally sufficient evidence and that it was in accord with the weight of the evidence. The Appellate Division reversed the judgment of conviction and ordered a new trial, however, "because the court improperly delegated a judicial function to a court *30 officer and because, in so doing, it abridged the defendant’s right to be present during a critical stage of his jury trial” (People v Bonaparte, 161 AD2d 774).
It is true, of course, that a defendant has the right to be present during all critical stages of a trial and that this includes the right to be present when the jury is given instructions or information by the court (see, Snyder v Massachusetts, 291 US 97, 105-106; People v Harris, 76 NY2d 810, 812; People v Mehmedi, 69 NY2d 759; see also, CPL 310.30). Equally true is that the court may not delegate to a nonjudicial staff member its authority to instruct the jury on matters affecting their deliberations (People v Torres, 72 NY2d 1007; People v Ahmed, 66 NY2d 307).
Nevertheless, not every communication with a deliberating jury requires the participation of the court or the presence of the defendant. For example, in People v Harris (supra), we held that the court could seek clarification of a readback request from the jury without the defendant’s presence, and in People v Ciaccio (47 NY2d 431, 437), we noted that a court officer could perform the ministerial task of inquiring whether the jury had reached a verdict. Even the dissent in Harris acknowledged that the defendant’s presence was not required for communications with the jury about "the logistics of the deliberative process, such as the timing of the jury’s eating break” (People v Harris, supra, at 813, n [Titone, J., dissenting]).
Indeed, the supervisory role of the court officer with respect to a deliberating jury will often require the officer to speak to the jurors about a variety of ministerial matters, as the statute conferring such supervisory authority acknowledges (see, CPL 310.10 [court officer may not speak to jurors "(except when so authorized by the court or when performing administerial duties with respect to the jurors”]). Ministerial duties may include, by way of example, determining who to contact to secure whatever personal belongings the jurors might need for an overnight stay or enforcing the court’s instructions not to discuss the case among themselves or others during periods of sequestration.
In this case, the record indicates that the court officer, at the court’s direction, simply told the jurors that they should stop deliberating because they were going to be taken to dinner and sequestered for the evening. That communication fell within the scope of the court officer’s authority to speak to *31 the jurors in connection with his "administerial duties” (CPL 310.10). The court officer did not attempt to convey any legal instructions to the jury or to instruct them as to their duties and obligations upon sequestration or otherwise. This case is therefore easily distinguished from People v Torres (supra), where the court officer told a deadlocked jury to continue to deliberate, in effect delivering an Allen charge (see, Allen v United States, 164 US 492), a particularly sensitive matter. Similarly distinguishable is People v Ahmed (66 NY2d 307, supra), where, in the Judge’s absence, a law secretary responded to questions from the jury concerning issues in the case. Here, the court officer did not deliver any instructions to the jury concerning the mode or subject of their deliberations. Consequently, there was no improper delegation of judicial authority and the defendant’s presence was not required when the court officer spoke to the jury.
In fact, defendant’s concern after the verdict was reached was not that the court officer had improperly instructed the jury about their duties and obligations during sequestration, but rather that no one, including the court, had given the jury such instructions and that, therefore, the jury may have deliberated during the sequestration period.
The emphasis of defendant’s complaint was on the possibility of jury impropriety, but the court’s inquiries and the court officer’s responses apparently satisfied defendant in this regard. After the court expressed its own conclusion that no improper deliberations occurred, the court noted that defendant had made no motion and stated, "I don’t know what I am supposed to do at this point other than to say that’s my reaction to it.” Despite this opportunity, defense counsel said nothing, thus never indicating to the court what further measures, if any, he thought might be appropriate.
To the extent that defendant’s protest can be construed as an objection to the court’s failure to give sequestration instructions to the jury, an issue not addressed by the Appellate Division, we conclude that this claim was not preserved for our review because, by the time the protest was made, it was too late for the court to cure the error.* Nor does this *32 record establish that defendant had no earlier opportunity to raise the claim. Although the Appellate Division stated in its recitation of the facts that "[d]efense counsel protested the failure to notify him the previous evening when the jury was to be sequestered” (161 AD2d, at 774), the record reveals no such protest. To the contrary, defense counsel acknowledged that he "was told they were just going to be sent out,” suggesting that defense counsel knew that the jury was going to be sequestered without reconvening for formal instructions from the court, which would have required his and the defendant’s presence. At a minimum, it is far from clear that defense counsel first learned of the sequestration the following day and, indeed, it would be surprising if this were true.
Thus, inasmuch as defendant made no request of the court to provide sequestration instructions to the jury at a time when the omission could have been cured, and the record does not support a claim that he was deprived of any opportunity to do so, the court’s failure to provide the instruction presents no issue of law for our review. That is not to say that we approve of the trial court’s procedure in this case. The better practice, and the one that should be followed in the future, would be for the court, in the presence of the defendant and his counsel, to notify the jurors that they are going to be sequestered for the evening and to instruct them as to their duties and obligations during this period, including their duty to refrain from discussing the case among themselves or with others. On this record, however, the failure of the court to do so does not require a new trial.
Accordingly, the order of the Appellate Division should be reversed, and the judgment of Supreme Court, Kings County, reinstated.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 Unlike the arguments considered above concerning the defendant’s right to be present at critical stages of the trial and the delegation of judicial authority, both of which implicate "the organization of the court or the mode of proceedings prescribed by law” and present reviewable questions of law even in the absence of a timely objection (People v Mehmedi, 69 NY2d *32 759, 760; People v Ahmed, 66 NY2d 307, 310), a claim concerning the court’s failure to give an instruction must be preserved by a timely objection or request to charge (see, CPL 470.05 [2]; People v Creech, 60 NY2d 895 [failure to charge presumption of innocence not preserved in the absence of an objection or request to charge]; People v Johnson, 61 NY2d 656 [same]; see also, People v Brown, 66 NY2d 997).