[601 NYS2d 132]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WILLIAM BUXTON, Appellant.

Second Department, August 2, 1993

APPEARANCES OF COUNSEL

*Philip L. Weinstein,* New York City *(Michael Murray* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Seth M. Lieberman* and *Victor Barall* of counsel), for respondent.

**OPINION OF THE COURT**

BRACKEN, J. P.

A Trial Judge may properly authorize a court officer to speak to a deliberating jury when the subject of the communication is " 'administerial' " *(People v Bonaparte,* 78 NY2d 26, 31, quoting CPL 310.10). However, a Trial Judge who authorizes a court officer to communicate with a jury on matters which are not administerial not only errs, but commits an error so grave as to warrant reversal even though the defendant's attorney might have consented to the occurrence of the error *(see, People v Torres,* 72 NY2d 1007; *People v Ahmed,* 66 NY2d 307). Our resolution of the arguments raised by the defendant on this appeal hinges on whether certain communications between a court officer and a deliberating jury may properly be characterized as administerial. We hold that they may, and we therefore affirm.

The evidence produced by the prosecution established, beyond a reasonable doubt, that on March 16, 1990, inside a stairwell of a building on Rockaway Parkway in Brooklyn, the defendant sodomized a 13-year-old girl. The victim was in fact subjected to repeated acts of rape and sodomy committed by the defendant and by his two codefendants, Daniel Polhill and

George Hyacinthe. The defendant was convicted, after a jury trial, of two counts of sodomy in the first degree, and sentenced to two concurrent terms of 4 to 12 years' imprisonment. On appeal, the defendant argues that he is entitled to a new trial because of the method by which the trial court, with the express or tacit consent of defense counsel, chose to communicate with a reportedly deadlocked jury.

The jury commenced deliberations on March 5, 1991, and retired that evening without reaching a verdict. After resuming deliberations the following day, the jury sent the court a note stating as follows: "The jury has reached a unanimous verdict on two counts, but is hopelessly deadlocked on the four others. We would like your guidance as to what we should do as it pertains to the law". In the presence of the prosecutor, the defendants, and their attorneys, the court stated:

"Now, since this note is somewhat ambiguous, I've conferred with defense counsel regarding this and I want to be sure I know exactly what the note means before we proceed.

"I propose to send in a note to the jury which reads as follows: 'Dear Madam Forewoman and members of the jury; Have you reached a verdict on all three defendants on two counts? Please answer yes or no' ".

After the parties agreed to this procedure, the court instructed the court officer who was to deliver the note that he was to "direct the jurors to return this note with the answer on it".

After the jury responded in the affirmative (i.e., that it had reached a verdict as to all three defendants on two counts), the court observed that it had two options. The court's first alternative was to instruct the jury to continue deliberating until reaching a verdict on all counts. The second alternative was to accept a partial verdict. The court observed that it could "bring the jury in and take a verdict as to those two counts that they agree to". The court added: "[a]fter we hear what the verdict is, [we will] have a conference and decide whether or not the jury should be discharged, or should be directed to continue deliberating on the four remaining counts that they have not yet agreed upon".

The court suggested that the latter option was the "right option" and, upon inquiring of all parties, ascertained that neither the prosecutor nor the defendants had any objection to proceeding in the manner the court had proposed. The court continued: "Then the court will direct the court officer to

instruct the jury to complete filling out the verdict sheet as to the two counts they have a verdict on, check off those things on the verdict sheet, but not to mark the other counts at all, and then to bring the jury into the courtroom when the verdict sheet had been filled out as to those two counts". In accordance with the foregoing procedure, the jury returned to the courtroom and delivered its partial verdict, finding the defendant and the codefendants each guilty of two counts of sodomy in the first degree.

The defendant now argues that the court erred in directing the court officer to deliver the " 'Dear Madam Forewoman' " note to the jury. Instead, the defendant argues, the jury should have been brought back into the courtroom and the contents of that note read directly to them by the Trial Judge. The defendant also argues that after having received an affirmative response to this note, the court erred in directing a court officer to advise the jurors as to how the verdict sheet should be completed. Instead, the defendant argues, the Trial Judge should have delivered this "instruction" to the jury in person.

■ There are two distinct but complementary components to the defendant's argument on appeal. First, his argument is one that might be described as an "improper delegation" argument. He argues, in other words, that the messages conveyed to the jury by the court officer should instead have been conveyed by the Trial Judge himself. Second, the defendant's argument might also be described as a "right to presence" argument. He asserts, in other words, that his right to be present at all material stages of the trial was violated inasmuch as the court officer's communications with the jury were made in his absence. Both the "improper delegation" aspect (see, People v Bonaparte, 78 NY2d 26, supra; People v Ahmed, 66 NY2d 307, supra), and the "right to presence" aspect (see, People v Dokes, 79 NY2d 656; People v Mehmedi, 69 NY2d 759) of the defendant's argument are reviewable as questions of law even in the absence of any objection.

■ The two components of the defendant's argument are reflected in the terms of two statutes. The first statute, CPL 310.10, provides, among other things, that a deliberating jury must "be continuously kept together under the supervision of a court officer". CPL 310.10 also provides that "[e]xcept when so authorized by the court or when performing administerial duties with respect to the jurors, such court officers * * * may not speak or communicate with them" (emphasis added). Read

literally, this statute would seem to authorize Trial Judges to communicate with deliberating jurors indirectly, through a court officer, even with respect to nonadministerial matters. However, because this statute must be considered in connection with those statutory (see, CPL 310.30) and constitutional (NY Const, art I, § 6) provisions which guarantee a defendant's right to be present during the delivery of jury instructions (see, Snyder v Massachusetts, 291 US 97, 105-106; People v Ciaccio, 47 NY2d 431, 436; People ex rel. Bartlam v Murphy, 9 NY2d 550, 553; People v Tyler, 14 AD2d 609; NY Const, art I, § 6), this literal construction of CPL 310.10 is not possible.

The second statutory foundation for the defendant's argument is to be found in the terms of CPL 310.30. This statute states, in relevant part, that a deliberating jury may request that the trial court provide "further instruction or information with respect to the law * * * or with respect to any other [pertinent] matter". CPL 310.30 further provides that, in the event such a request is made, the trial court *"must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant,* must give such requested information" (emphasis added). It is appropriate to note, at this point, that a literal construction of this statute might lead to the conclusion that the defendant had the right to be present during the communication between the court officer and the jury in this case, because this communication was responsive to the jury's request for "guidance as to what [they] should do as it pertains to the law". However, because the only "instruction or information" given by the court amounted, in essence, to a direction to cease deliberations, we find that the case law, to be examined below, supports the conclusion that the defendant had no right to be present during this communication.

The cases which define the scope of a court officer's supervising role in jury deliberations (see, People v Bonaparte, 78 NY2d 26, supra; People v Torres, 72 NY2d 1007, supra) are in harmony with those cases which define the scope of a defendant's right to be present during all "material stages" of a trial (see, People v Lykes, 81 NY2d 767; People v Bonaparte, supra; People v Harris, 76 NY2d 810). Where a court officer's communication relates to an administerial matter so as to fall within the officer's supervisory role (see, CPL 310.10), it follows that the defendant's absence during such communication does not constitute a violation of the defendant's right to be present. Thus, those cases which address the scope of the

defendant's right to be present when a jury receives a communication originating from the Judge are, in our opinion, also authoritative on the issue of whether such a communication may properly be transmitted to the jury by a court officer, rather than solely by the trial court itself.

In view of the foregoing, we find that the case most closely on point is *People v Lykes* (81 NY2d 767, *supra*). As in the present case, the court in *Lykes* had received a jury note which was ambiguous. In *Lykes,* the court responded by sending a note to the jury which included a request for clarification. Unlike the present case, the court did not consult the attorneys before drafting this note *(see, People v Lykes, supra,* at 768-769). The Court of Appeals held that no error had occurred, stating that "[CPL] 310.30 does not require notice to defendant in every instance of communication from the jury to the court" *(People v Lykes, supra,* at 769).

Although the *Lykes* decision was addressed to the scope of the defendant's right to receive notice, personally or through an attorney, of a jury's request for further information *(see, People v O'Rama,* 78 NY2d 270), we are of the opinion also that it is authoritative on the scope of a court officer's supervisory role. While it is not clear from the text of the *Lykes* decision who it was who actually relayed the court's request for clarification to the jury, one may fairly hypothesize that it was in fact a court officer. At the very least, one might observe that if it is at all permissible to send a note to a deliberating jury in order to obtain a clarification of the meaning of an earlier note which had been received from the jury *(see, People v Lykes, supra),* then it would make little sense to hold that the court itself, rather than a court officer, must physically deliver such a note.

This is further illustrated by the case of *People v Harris* (76 NY2d 810, *supra).* In *Harris,* the trial court had received a note from a deliberating jury in which the jurors requested a read-back of certain testimony. The note was ambiguous as to whether the jurors wanted to hear the testimony *of* a certain witness, or the testimony *about* that witness *(see, People v Harris, supra,* at 812). The Trial Judge, accompanied by the attorneys, went to the jury room and obtained the needed clarification. The Court of Appeals in *Harris* rejected the defendant's argument that he had the right to be present while the court sought this clarification. For the reasons outlined above, we believe that the *Harris* Court's holding that the defendant had no right to be present at the time of

the communication under review in that case also supports the proposition that that communication is one which could have been transmitted by a court officer rather than by the Judge in person.

The defendant cites *People v Torres* (72 NY2d 1007, *supra)* and *People v Ahmed* (66 NY2d 307, *supra)* in support of his argument that "a trial judge may not delegate to non-judicial personnel the responsibility of providing instructions to the jury". The *Torres* case, more than any other, supports the defendant's argument for reversal. However, in a more recent and more factually similar case *(People v Bonaparte,* 78 NY2d 26, 31, *supra),* the Court of Appeals found both *Torres* and *Ahmed* to be "easily" distinguishable.

In *Bonaparte,* a court officer, in obedience to the Trial Judge, had told a jury to cease deliberations and had informed the jurors that they would be taken to dinner and sequestered for the evening *(see, People v Bonaparte, supra,* at 29). The Court of Appeals held that this communication "fell within the scope of the court officer's authority to speak to the jurors in connection with his 'administerial duties' (CPL 310.10)" *(People v Bonaparte, supra,* at 30-31).

In distinguishing *Ahmed* and *Torres,* the *Bonaparte* Court stated: "This case is therefore easily distinguished from *People v Torres (supra),* where the court officer told a deadlocked jury to continue to deliberate, in effect delivering an *Allen* charge *(see, Allen v United States,* 164 US 492), a particularly sensitive matter. Similarly distinguishable is *People v Ahmed* (66 NY2d 307, *supra),* where, in the Judge's absence, a law secretary responded to questions from the jury concerning issues in the case. Here, the court officer did not deliver any instructions to the jury concerning the mode or subject of their deliberations" *(People v Bonaparte,* 78 NY2d, *supra,* at 31).

Although not mentioned in the *Bonaparte* decision, there was another distinguishing factor present in both *Ahmed* and *Torres.* In both of those cases, the Trial Judge had physically departed from the courtroom and was presiding from a distance. The absence of the Judge during material stages of trial, even prior to *Ahmed,* had been regarded as a fundamental deviation from procedure which would warrant reversal even in the absence of an objection. "[S]ince the judge is a most important part of a court, it is his duty to be present throughout all proceedings relating to the trial" *(People v Parisi,* 276 NY 97, 100; *see also, People v Ahmed, supra,* at 312).

In the present case, the court officer's first contact with the jury was without question administerial. In delivering the court's note to the jury and the jury's response to the court, the court officer was doing no more than was done in *People v Lykes* (81 NY2d 767, *supra)* and *People v Harris* (76 NY2d 810, *supra).* In his second encounter with the jury, the officer, in essence, informed the jurors that they could cease their deliberations *(see, People v Bonaparte, supra; People v Nacey,* 78 NY2d 990; *cf., People v Torres, supra).* The comments made by the officer as to the completion of the verdict sheet could not possibly have informed the jurors of anything which they would not already have deduced, i.e., that in light of the partial nature of their verdict, the verdict sheet was to be filled out only partially. We do not believe that it was an error so fundamental as to warrant reversal, in the absence of an objection, that the court officer told the jury that its verdict sheet could be as incomplete as the actual verdict which it was about to pronounce. We conclude, in sum, that the communications between the court officer and the jury in this case were administerial *(see, People v Ford,* 78 NY2d 878; *People v Torres,* 191 AD2d 601 [court officer permitted to tell jury that it should limit its deliberations to first three of the several counts charged]; *People v Smith,* 181 AD2d 844 [court officer permitted to tell jury to cease deliberating and to follow all of the court's prior instructions]).

For these reasons, the judgment appealed from is affirmed.

BALLETTA, ROSENBLATT and MILLER, JJ., concur.

Ordered that the judgment is affirmed.