OPINION OF THE COURT
 

 Bellacosa, J.
 

 The two legal issues emanating from this murder conviction after a third jury trial are whether (1) the Hearing Justice, at
 
 *235
 
 a postjudgment
 
 Batson
 
 remittal
 
 (see, Batson v Kentucky,
 
 476 US 79) to inquire into the prosecutor’s peremptory jury strikes, was required to give the defense a full adversarial cross-examination opportunity as to the trial prosecutors who, as desired by the Hearing Justice, gave their
 
 Batson
 
 explanations under oath; and (2) the Trial Justice’s discussion with the jury foreperson alone concerning some sequestration details violated defendants’ right to presence or to counsel.
 

 After the remittal hearing and findings were completed at Supreme Court, the Appellate Division ruled on the entire appeal, found no errors and affirmed the judgments of conviction. A Judge of this Court granted leave to appeal and we now affirm.
 

 L
 

 On the morning of April 16, 1981, Police Officers Richard Rainey and John Scarangella pulled over a van. The two defendants immediately left the vehicle, approached the patrol car and fired into the car, hitting both officers. Officer Rainey survived to testify and Officer Scarangella died two weeks after the shooting.
 

 At their first trial, defendants were convicted of attempted murder in the second degree for the shooting of Officer Rainey. The jury was unable to reach a verdict on the murder in the second degree count relating to Officer Scarangella and a mistrial was declared in that respect. The second trial, on the murder charge alone, also resulted in a mistrial. At the third trial in 1986, the one at issue here, both defendants were convicted of the murder of Officer Scarangella.
 

 The Appellate Division initially affirmed the convictions (178 AD2d 546). Then, upon reargument, the Appellate Division vacated the affirmance, ordered the appeal held in abeyance, and remitted the case to Supreme Court, Queens County, for a
 
 Batson
 
 hearing
 
 (see, Batson v Kentucky,
 
 476 US 79,
 
 supra),
 
 at which the prosecution would have to justify its peremptory challenges with race-neutral reasons (183 AD2d 847).
 

 A different Justice presided at the hearing than at the trial. To assist the court’s task and responsibility in connection with this hearing, the court directed the prosecutors to testify under oath; the defense was likewise to present its witnesses under oath. The court foreclosed traditional cross-examination of those testifying and, instead, offered the parties the opportunity to submit questions in writing, which the court would then pose to the witnesses.
 

 
 *236
 
 Three witnesses testified on the prosecution side: the two Assistant District Attorneys who tried the case for the People, and one prosecution investigator. Before any testimony was taken, the prosecutors turned over all written voir dire notes and materials to the defense voluntarily. While defense counsel submitted written questions to be asked of the investigator, they refused to do so with respect to the prosecuting attorneys. As to them, the defense team insisted on an opportunity for full, customary, lawyer-to-witness oral cross-examination. The court denied this request.
 

 The lead trial prosecutor testified as to his race-neutral reasons for the peremptory challenges of 12 African-American jurors and two African-American alternate jurors. As to four of these, the defense conceded before the hearing court that the proffered reasons were "arguably race-neutral.” The precise reasons proffered and whether the prosecution and defense carried their respective burdens are not at issue here. Rather, the hearing court’s decision not to allow the defense to cross-examine the testifying prosecutors is the first and primary prong of this appeal.
 

 In a 66-page opinion containing findings of fact and conclusions of law after a hearing held intermittently over three months, the court concluded that the prosecutor presented race-neutral explanations that were nonpretextual. The court found that the lead prosecutor’s testimony was credible, "straightforward and nonevasive.” The Appellate Division’s ultimate upholding of the guilty verdicts — now before us— sustained the hearing court’s findings and rejected the cross-examination argument as "without merit” (212 AD2d 728, 729).
 

 II
 

 Defendants urge that the hearing court’s refusal to allow customary, trial-type cross-examination of the prosecutors at the postverdict
 
 Batson
 
 hearing deprived them of due process of law and their Sixth Amendment right to confront witnesses (US Const 6th, 14th Amends;
 
 see also,
 
 NY Const, art I, § 6). As to the due process claim, they argue that a full-blown evidentiary hearing is necessary to ensure a fair proceeding and to satisfy the goals of
 
 Batson v Kentucky
 
 (476 US 79,
 
 supra).
 
 They further argue that a Confrontation Clause violation also derives from the refusal to allow cross-examination at a
 
 Bat-son
 
 inquiry. We disagree with both contentions.
 

 This Court and the United States Supreme Court have settled on a three-step procedure governing trial court review
 
 *237
 
 of claimed discrimination in the exercise of peremptory challenges as part of jury selection
 
 (see, People v Payne,
 
 88 NY2d 172 ;
 
 People v Allen,
 
 86 NY2d 101;
 
 see also, Purkett v Elem,
 
 514 US 765, 115 S Ct 1769;
 
 Hernandez v New York,
 
 500 US 352,
 
 affg
 
 75 NY2d 350). In cases such as the present one, the defense must set forth a prima facie basis of discrimination, at which point the prosecution must come forward with facially race-neutral reasons for its challenged peremptory strikes
 
 (People v Payne, supra).
 
 The Trial Judge must ultimately determine whether the proffered reasons are pretextual, the burden of persuasion resting on the challenger to the peremptory strike
 
 (id.).
 

 In none of the many cases interpreting the
 
 Batson
 
 protocols have either this Court or the Supreme Court ever imposed any particular
 
 form
 
 of procedure for considering
 
 Batson
 
 challenges. Instead, the actual conduct of the inquiry has been placed within the sound discretion and molding of the trial courts
 
 (see, People v Hernandez,
 
 75 NY2d 350, 357,
 
 affd
 
 500 US 352,
 
 supra; Batson v Kentucky, supra,
 
 476 US, at 100), as long as the substantive principles are satisfied
 
 (People v Payne, supra; People v Allen,
 
 86 NY2d 101,
 
 supra; see also, United States v Clemons,
 
 941 F2d 321, 323-324).
 

 We are satisfied that as a general proposition examination under oath of any individuals in these matters is
 
 not
 
 compelled. Indeed, the vast majority of courts in other jurisdictions that have specifically been asked to impose such a requirement have declined to do so
 
 (see, e.g., United States v Jiminez,
 
 983 F2d 1020, 1024,
 
 cert denied
 
 510 US 925;
 
 United States v Tindle,
 
 860 F2d 125, 130,
 
 cert denied
 
 490 US 1114;
 
 United States v Garrison,
 
 849 F2d 103, 106,
 
 cert denied
 
 488 US 996;
 
 Gray v State,
 
 317 Md 250, 258-260, 562 A2d 1278, 1282-1283;
 
 State v Jackson,
 
 322 NC 251, 257-258, 368 SE2d 838, 842,
 
 cert denied
 
 490 US 1110;
 
 State v Powers,
 
 92 Ohio App 3d 400, 409, 635 NE2d 1298, 1304,
 
 cert denied
 
 — US —, 115 S Ct 366;
 
 but see, e.g., Williams v State,
 
 767 SW2d 872, 874 [Tex App]). We agree with the Supreme Court of North Carolina that "[t]he presiding judges are capable of passing on the credibility of prosecuting attorneys without the benefit of cross-examination”
 
 (State v Jackson, supra,
 
 322 NC, at 258, 368 SE2d, at 842;
 
 cf., People v Allen,
 
 86 NY2d 101, 105,
 
 supra
 
 [postverdict
 
 Batson
 
 hearing limited to the proffer of race-neutral reason by prosecutor and opportunity for defendant to rebut]).
 

 In fact, the major doctrinal conflict in this area is not about allowing cross-examination relating to the exercise of peremp
 
 *238
 
 tory challenges. Rather, the tension is between "those [courts] that recommend an adversary proceeding of some type [and] those that permit the prosecutor’s explanation to be received in camera and ex parte”
 
 (Gray v State,
 
 317 Md 250, 257, 562 A2d 1278, 1281,
 
 supra; compare, United States v Tucker,
 
 836 F2d 334, 340 [7th Cir] [in camera proffer permissible],
 
 cert denied sub nom. Bell v United States,
 
 488 US 855, and
 
 United States v Davis,
 
 809 F2d 1194, 1201 [6th Cir] [same],
 
 cert denied
 
 483 US 1007,
 
 with United States v Thompson,
 
 827 F2d 1254, 1258-1259 [9th Cir] [adversarial proceeding necessary in adjudicating
 
 Batson
 
 claims]). This Court has never sanctioned an ex parte procedure and has already resolved the question in favor of an open court exchange between the competing camps, with appropriate opportunity for input from both sides to make a proper record and to assist the trial court in its singular adjudicative responsibility and supervision of the jury selection process
 
 (People v Payne, supra).
 

 We perceive no sound or compelling reason to impose new, stringent, procedural requirements for
 
 Batson
 
 hearings, whether they are held before trial or, as here, after trial. To be sure, "the disruption to a trial which could occur if an attorney in a case were called as a witness”
 
 (State v Jackson,
 
 322 NC 251, 258, 368 SE2d 838, 842,
 
 supra)
 
 might be less after the trial has been completed and the verdict rendered, but that is not determinative of a constitutional imperative. Importantly, prosecutors are officers of the court, with a corresponding "unqualified duty of scrupulous candor that rests upon government counsel”
 
 (Shotwell Mfg. Co. v United States,
 
 371 US 341, 358,
 
 reh denied
 
 372 US 950). Generally, trial courts should thus be entitled to rely on the prosecutors’ open court, on the record representations, without the need of a formal oath, either before or after the rendition of the verdict
 
 (see, Burns v Windsor Ins. Co.,
 
 31 F3d 1092, 1095, n 5 ["The duty of candor goes beyond the moral duty imposed on counsel by ethical codes or good conscience”]; Code of Professional Responsibility DR 7-102 [22 NYCRR 1200.33]). As such, we see "no reason why the defendant should be allowed to examine a prosecuting attorney at a post trial hearing if he could not do so at trial”
 
 (State v Jackson, supra,
 
 322 NC, at 258, 368 SE2d, at 842;
 
 see also, State v Powers, supra,
 
 92 Ohio App, at 409, n 2, 635 NE2d, at 1304, n 2).
 

 Finally, we reject the notion that cross-examination of the prosecutor was necessary because this Hearing Justice sensed a need or preference to have the prosecutors testify before him
 
 *239
 
 under oath in this case, with its unusual procedural history and circumstance. Certainly, the hearing court went beyond the requirements of
 
 Batson
 
 and its progeny by taking sworn testimony from the two trial prosecutors and one investigator. But this was a particularly sensitive case within a very unusual procedural framework before a Justice different from the Trial Justice; as such, the Hearing Justice did not observe the participants at the original trial voir dire, so there was a particularly compelling need and feature, as he saw it, for sworn statements.
 

 The hearing court should not be faulted for taking extra measures, nor should it now be found to have lapsed into error for not having gone even further. This is especially so since the hearing court was not constitutionally or otherwise required to have taken even the first extra precaution. It makes no sense to adopt such an unwise development and disincentive against trial courts structuring
 
 Batson
 
 hearings and exercising their discretion in favor of additional measures suitable to a particular case and circumstances.
 

 The defendants’ additional argument in this regard, that the failure to allow cross-examination of the prosecutors in this type of hearing violates their right to confront witnesses, finds no support in any authorities or, analytically, in the nature of these matters (US Const 6th, 14th Amends;
 
 see also,
 
 NY Const, art I, § 6). Typically, "the right to confrontation is a
 
 trial
 
 right” available against witnesses
 
 at trial (Pennsylvania v Ritchie,
 
 480 US 39, 52;
 
 see also, Barber v Page,
 
 390 US 719, 725). We are unaware of any generalized "right to the adversarial process” that would support the claim as advanced here.
 

 Specifically, the prosecutors who testified at the
 
 Batson
 
 hearing in this case were not testifying as witnesses "against” the defendants, but were instead explaining and justifying their own professional conduct, undertaken previously at a
 
 pretrial proceeding,
 
 to a Judge as the sole adjudicator of such matters. Defendants’ rights under the Confrontation Clause were in no way implicated or compromised by the limitation the Hearing Justice placed on traditional cross-examination in these circumstances, noting additionally the court’s allowance of flexible, realistic alternatives.
 

 m.
 

 Defendants’ second appellate issue relates to a discussion between the Trial Justice and the jury foreperson concerning
 
 *240
 
 some details of jury sequestration during deliberations. This conference occurred during the summation portion of the trial and before deliberations began. The claimed violations derive from the defendants’ right to be personally present at material stages of trial under CPL 260.20 and 310.30, as well as their right to the assistance of counsel at trial
 
 (see, People v Hilliard,
 
 73 NY2d 584, 586). The latter issue is keyed to the assertion that the Trial Justice, in effect, "instructed” the jury outside the presence of the defendants and defense counsel.
 

 During a recess in the prosecution summation, counsel for defendant Hameed asked the trial court to "make some inquiry” of a juror who had reflected discontent with a statement made by the court on the previous day. In response, the Trial Justice stated, "The Court already has,” and added that the juror’s "concern was that he be able to attend church services on Sunday.” The court then elaborated:
 

 "[H]e has been advised that he will have no difficulty in attending services and we will make the necessary arrangements.
 

 "He was also concerned about having to be sequestered over the weekend, but all the other jurors are concerned about that, too.
 

 "I also advised them that, with respect to that, that is something that has to happen. There is nothing we can do about it.”
 

 Neither defendant objected to this information at this point and in this form. Counsel for defendant Hameed, however, asked the court to instruct the entire jury, as to sequestration, "that nothing should stand in their way to a full deliberation.” In response, the Trial Justice attempted to clarify what exactly he had done earlier in this regard: "I have already instructed them with respect to that. It has already been done” in that "I had the * * * Forelady of the * * * Jury up in my chambers.” The Justice added that the discussion had happened "a few moments ago and we went over the entire area, all those areas.” Defense counsel objected to the court having held this unrecorded, ex parte discussion with only the jury foreperson.
 

 Although no stenographic record of the trial court’s meeting with the foreperson was made, the cited portions of the colloquy with counsel demonstrate that the statements the defendants now claim amounted to an "instruction” may properly be characterized as merely ministerial features of the
 
 *241
 
 sequestration requirement. While the Trial Justice’s actions in this case in 1986 are not a model of preferred practice, no discernible prejudicial error is evident from the handling of these essentially ministerial matters, wholly unrelated to the substantive resolution of the case.
 

 The dispositive inquiry ultimately focuses on whether the matter discussed was merely ministerial
 
 (see, People v Bonaparte,
 
 78 NY2d 26, 31) and, thus, "wholly unrelated to the substantive legal or factual issues of the trial”
 
 (People v Harris,
 
 76 NY2d 810, 812). We are satisfied on this record that the challenged discussion in this case bore no substantial relationship to the defendants’ opportunity to defend against the charges
 
 (id.,
 
 at 812;
 
 see, People v Bonaparte,
 
 supra;
 
 People v Ford,
 
 78 NY2d 878, 880;
 
 see also, People v Darby,
 
 75 NY2d 449, 454).
 

 All aspects of defendants’ arguments have been considered, and we conclude that they are without force or merit and that an affirmance of the ruling upholding the convictions is proper and warranted.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order affirmed.