GEORGE, C. J., Dissenting.
I agree with the majority’s conclusion that the ex parte procedure employed by the trial court to review defendant’s challenge to the prosecution’s use of peremptory challenges under People v. Wheeler (1978) 22 Cal.3d 258, 276-277 [148 Cal.Rptr. 890, 583 P.2d 748] (Wheeler) and Batson v. Kentucky (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (Batson) was error, but I disagree with its unprecedented conclusion that the erroneous exclusion of the defense from a crucial portion of jury selection proceedings may be deemed harmless. I believe that applicable state and federal precedent clearly requires that we reverse defendant’s conviction and remand this case for a new trial.
I.
During voir dire, defendant’s counsel made three separate Wheeler/Batson motions, based upon the prosecution’s challenges to seven potential jurors who were members of a racial or ethnic minority. The trial court was uncertain whether the first two motions (concerning two jurors each) stated a prima facie case, but in an abundance of caution it asked the prosecution to respond with reasons for those challenges, and it held hearings on those motions. The trial court expressly found that the third defense motion (concerning three jurors) stated a prima facie case, asked the prosecution to respond, and held a hearing on that motion as well.
In response to the first motion, the prosecution stated: “I can do that [i.e., provide reasons for the peremptory challenges], but I would do it in chambers, without the presence of counsel . ... HQ They are not entitled to our strategy.” In reply, defense counsel stated: “But I think I. . .am entitled to be present with respect to their statement, to the extent that their arguments— that their statement is a misstatement of the facts, and I think Pm entitled to at least make sure the record is clear as to what the statement of facts is.” (Italics added.) Defense counsel immediately added: “With respect to strategy, I certainly don’t want to pry into the strategy.” The court thereafter allowed the prosecutor to state his reasons at all three hearings in camera, outside the presence of defendant and his counsel, with the proceedings reported but the record sealed.[1]
II.
I first explain why I agree with the majority that the trial court erred by conducting the Wheeler/Batson hearing outside the presence of defendant *292 and his counsel. Under the procedure established in Wheeler and Batson, once a defendant presents a prima facie case that the prosecution has employed peremptory challenges in a racially discriminatory manner, the prosecution is provided with an opportunity to explain or rebut that showing. But the burden of persuasion on this issue still, and always, remains with the defendant. This has long been the operating assumption under both Wheeler and Batson. (See, e.g., Purkett v. Elem (1995) 514 U.S. 765, 768 [115 S.Ct. 1769, 1711, 131 L.Ed.2d 834] [“the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike”].) Seen in this light, it becomes clear why a defendant must have the right to be present with counsel and to participate in the proceeding when the prosecution undertakes its rebuttal. The defendant’s obligation to persuade the court continues even after the prosecution has made its statement, and accordingly, a clear majority of decisions has recognized that a defendant must have the right to be present with counsel in order to comment on, and possibly offer surrebuttal to, the prosecution’s representations. (See, e.g., U.S. v. Thompson (9th Cir. 1987) 827 F.2d 1254, 1258-1259 (Thompson)-, U.S. v. Roan Eagle (8th Cir. 1989) 867 F.2d 436, 441; U.S. v. Gordon (11th Cir. 1987) 817 F.2d 1538, 1541, vacated and remanded on another point (1988) 836 F.2d 1312; Ex Parte Branch (Ala. 1987) 526 So.2d 609, 624; Gray v. State (1989) 317 Md. 250 [562 A.2d 1278, 1282-1283]; Com. v. Futch (1995) 38 Mass.App. 174 [647 N.E.2d 59, 61-62]; Harper v. State (Miss. 1987) 510 So.2d 530, 532]; State v. Antwine (Mo. 1987) 743 S.W.2d 51, 63-64; People v. Hameed (1996) 88 N.Y.2d 232 [644 N.Y.S.2d 466, 666 N.E.2d 1339, 1342]; Buck v. Com. (1994) 247 Va. 449 [443 S.E.2d 414, 415]; see also Note, Defense Presence And Participation: A Procedural Minimum for Batson v. Kentucky Hearings (1989) 99 Yale LJ. 187.)[2]
As Judge Kozinski observed for the court in Thompson, supra, 827 F.2d 1254, defense counsel serves two crucial functions when the prosecution states its reasons at a Wheeler/Batson hearing. First, the presence of the defendant and his or her counsel may assist the court in probing the prosecution’s stated reasons and uncovering pretextual justifications—for example, counsel might be able to point out that other nonexcluded jurors *293 had the same attribute put forth as a reason for excluding the subject juror. (Thompson, supra, 827 F.2d at p. 1260.) In the same vein, defense counsel also might be able to argue that reasons advanced by the prosecution are legally improper. (Ibid.) The court in Thompson observed that the trial judge “might be able to detect some of these deficiencies by himself, but that is not his normal role under our system of justice. He would have to take on the role of defense counsel—inventing possible arguments as to why the prosecutor’s stated reasons might not be sufficient—while at the same time keeping an open mind so as to rule on the motion impartially.” (Ibid.) And there may be valid arguments that a trial court will overlook unless assisted by an able, interested defense counsel. (Id., at pp. 1260-1261.) Finally, “[a]t least as to some matters, the court simply might not have the time to ferret out the facts.”[3] (See id., at p. 1260, fn. 4.)
Second, as the court observed in Thompson, supra, 827 F.2d 1254, defense counsel performs another important function at a Wheeler/Batson hearing: preserving “for the record, and possible appeal, crucial facts bearing on the judge’s decision.” (Thompson, supra, 827 F.2d at p. 1261.) The court in Thompson stated: “This is a case in point. All we have before us concerning this issue is the prosecutor’s explanation of her reasons and the district judge’s ruling. For all we know, however, every one of the jurors picked might have worn jeans or voted to acquit a prior defendant [(these were among the prosecution’s reasons for challenges)]. Our trust in the learned district judge does, of course, make us quite certain that this could not have been the case. However, if we are to review the district judge’s decision, we cannot ajfirm simply because we are confident he must have known what he was doing. We can only serve our function when the record is clear as to the relevant facts, or when defense counsel fails to point out any such facts after learning of the prosecutor’s reasons. [f] Here, the record’s silence cannot be reassuring. . . . Since defense counsel did not learn of the prosecutor’s reason until long after the trial, the fact that he failed to point out any discrepancies cannot give us the confidence we would normally have when the record is mute. [f] In short, we respectfully disagree with the view that defense counsel has nothing to add once he has pointed out the potential Batson violation .... Defense counsel could say things that might persuade the district judge or, failing that, he could say things that might persuade us. Both functions are crucial to our adversary system and to the principles of due process it serves.” (Ibid., italics added.)
Under Thompson and its progeny—including today’s decision—a defendant has a right to be present and have his or her counsel orally rebut the *294 prosecution’s justifications unless it is shown that an ex parte procedure is necessary in order to protect some overriding interest that favors the maintenance of secrecy and the exclusion of the defendant (and counsel) as well as the public. We recently described some categories of such overriding interests in the related context of a defendant’s Sixth Amendment right to a public and open trial, and the public’s First Amendment right of access to criminal and civil trials. (See generally NBC Subsidiary (KNBC-TV) v. Superior Court (1999) 20 Cal.4th 1178, 1205 [86 Cal.Rptr.2d 778, 980 P.2d 337] (NBC) [defendant’s Sixth Amendment right to public trial]; id., passim [public’s First Amendment right of access to all significant parts of criminal and civil trials].)[4] For example, under appropriate circumstances, matters involving national security, a confidential informant, or an undercover investigation, may be revealed in camera and be kept from the public (see NBC, supra, 20 Cal.4th at p. 1222, fn. 46), and, as the majority observes, the Ninth Circuit Court of Appeals in Thompson equated with such matters the prosecution’s interest in keeping confidential certain aspects of tactics and strategy. (Thompson, supra, 827 F.2d at p. 1259.) But the court held in Thompson that on the facts presented in that case (as demonstrated by the ex parte, in camera sealed record) the prosecution’s Batson justifications were merely routine (they consisted of “the potential jurors’ profession, attitude, dress, address and the fact that one had acquitted in a prior case”). (Thompson, at p. 1259.) This, concluded the Ninth Circuit, did not amount to protectable strategy or tactics. (Ibid.) The majority here properly concludes likewise (maj. opn., ante, at pp. 261-262): the prosecutor’s stated reasons for exercising peremptory challenges did not implicate or reveal trial strategy. Accordingly, assuming for the purpose of analysis that the protection of confidential strategy may serve as an overriding interest that will justify the holding of ex parte, in camera hearings in this context, the facts here presented do not implicate any such interest and hence no adequate *295 justification existed for excluding defendant and his counsel from the Wheeler/Batson hearing.[5] The trial court erred by proceeding ex parte.
III.
The majority finds error under state law, and assumes for the purpose of analysis that the exclusion of a defendant and defense counsel from a Wheeler/Batson hearing also offends the federal Constitution. (Maj. opn., ante, at p. 264.) Yet the majority concludes that, on the facts of this case, the erroneous exclusion of defendant and his counsel from the jury selection hearing was harmless under state law (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (Watson)) and under the stricter federal constitutional harmless error standard of Chapman v. California (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (Chapman). (Maj. opn., ante, at p. 264.)
First, the majority’s application of the test for harmless error is suspect. Although the majority (ante, at p. 269) cites analogous cases which in turn stress that (i) “prejudice will be presumed’ if the “denial of counsel at the critical stage of a criminal proceeding[] . . . may have affected the substantial rights of the accused” and that (ii) “[o]nly the most compelling showing to the contrary will overcome the presumption” (People v. Knighten (1980) 105 Cal.App.3d 128, 132-133 [164 Cal.Rptr. 96] (Knighten), italics added)[6]— and although the majority apparently concedes, as it must, that the denial of counsel here may have affected defendant’s substantial rights (maj. opn., ante, at pp. 267-268)—nothing in the language, approach, tone, or structure of the majority opinion suggests that the majority’s harmless error analysis has been undertaken with these two crucial Knighten principles in mind.
*296 In any event, even if the majority properly were to expressly acknowledge and apply a presumption of prejudice in this case, the majority would be unable to properly rely upon the record made below to reach a reliable decision on the Wheeler/Batson issue. The record on this issue is incomplete, having been erroneously constructed with the input of only the prosecution and the court, and without crucial and necessary participation by defendant and his counsel. The court in Thompson, supra, 827 F.2d 1254, addressing this same issue, explained that we cannot credit the prosecutor’s explanations for the challenges (and the court’s rulings thereon), because “the very reason we hold the procedure to have been deficient is that, without defense counsel’s participation, the transcript is likely to be incomplete or misleading, as it is in this case. The government cannot rely on a transcript reflecting such fundamentally flawed procedures to show that that defendant suffered no prejudice.” {Id., at p. 1261, italics added.)
The method by which the majority proposes to find no prejudice here— reviewing the transcripts of the ex parte hearings in support of its conclusion that the prosecutor’s stated reasons amply justified the peremptory challenges—is precisely the form of analysis rejected in Thompson, supra, 827 F.2d 1254, and its progeny. (Accord, U.S. V. Alcantar (9th Cir. 1990) 897 F.2d 436 (Alcantar) [revg. conviction pursuant to Thompson].) It is difficult to imagine how the majority could reach its conclusions that the record is “well developed,” and that “defense counsel could not have argued anything substantial that would have changed the court’s rulings” (maj. opn., ante, at p. 268), while faithfully approaching the error by presuming prejudice and by recognizing that “[o]nly the most compelling showing to the contrary will overcome the presumption” of prejudice. (Knighten, supra, 105 Cal.App.3d 128, 133, italics added.)
The court concluded in Thompson that the erroneous exclusion of the defendant and his counsel from the hearing, and the resulting deficient record, produced a defect in the trial that rendered the record inadequate for purposes of appellate review. (Thompson, supra, 827 F.2d at p. 1261, fn. 5 [contrasting such error with trial errors that are subject to harmless error analysis].) The court in Thompson did not immediately reverse, however. Instead, it remanded “for a hearing ... on the prosecution’s motive in exercising its peremptory challenges. If the district court finds that the passage of time has rendered such a hearing meaningless, it shall vacate defendant’s convictions and schedule a new trial.” (Thompson, supra, 827 F.2d at p. 1262.)
Assuming the general propriety of such an after-the-fact hearing on remand, that approach is unavailable to us here, because even if the trial *297 judge,[7] the prosecutor, and defense counsel can be located now, it would be fanciful to expect those persons—11 years after the event—to be able meaningfully to reconstruct the record of the seven Wheeler/Batson motions here at issue. Facing a similar problem in People v. Hall (1983) 35 Cal.3d 161 [197 Cal.Rptr. 71, 672 P.2d 854], we observed that “[t]he proceedings were conducted more than three years ago. It is unrealistic to believe that the prosecutor could now recall in greater detail his reasons for the exercise of the peremptory challenges in issue, or that the trial judge could assess those reasons, as required, which would demand that he recall the circumstances of the case, and the manner in which the prosecutor examined the venire and exercised his other challenges.” (Id., at p. 171; see also People v. Snow (1987) 44 Cal.3d 216, 227 [242 Cal.Rptr. 477, 746 P.2d 452] [relying upon Hall, supra, and declining to remand six years after the event].)[8] Further, a remand also would be impracticable and inadequate in this case because the extensive written juror questionnaires of the vast majority of panelists who participated in the general voir dire have been lost and apparently destroyed. Thus, as a result of the trial court’s error, we are left with a record that is inadequate for our review and that cannot be reconstructed at this time. Accordingly, a reversal of the conviction and a remand for a new trial is the only appropriate remedy.
The majority purports to distinguish this case from Thompson, supra, 827 F.2d 1254, by observing that here, during the three ex parte hearings, the prosecution offered various justifications for challenges to the seven jurors, and in all seven instances the trial court stated on the record that it agreed with the prosecution’s position (although in a few instances it rejected some of the prosecution’s reasoning). Accordingly, the majority asserts that the present case, unlike Thompson, presents a situation in which the reviewing court has the benefit of the trial court’s remarks assessing the prosecutor’s reasons for the challenges, and that this in turn allegedly provides us with a “well-developed” record. (Maj. opn., ante, at p. 268, italics added.)
The majority fails in its attempt to distinguish Thompson. As noted above, the court in that case explained in detail why it would be improper to *298 conclude that a trial judge in this situation can fill in the gaps and create an adequate (much less a well-developed) record. (See Thompson, supra, 827 F.2d at pp. 1260-1261.) As defendant asserts, “[i]t is unrealistic to expect that a judge in the midst of trial will be able to pick out the discrepancies in a prosecutor’s justifications, especially where, as here, 70 panelists, whose questionnaires alone covered 77 questions . . . , participated in the general voir dire.” Contrary to the majority’s view and as Thompson itself shows, the circumstance that the trial court made a few comments on the record does not support a determination that the erroneous ex parte procedure was harmless beyond a reasonable doubt.[9]
The irony and fallacy of the majority’s approach is apparent. While eschewing the prospect of reversal based upon defendant’s “speculation regarding theoretical possibilities” (maj. opn., ante, at p. 267) that a properly created record might have presented a different picture “that would have changed the court’s rulings” (maj. opn., ante, at p. 268), the majority is quite willing to assume that the record is “well developed” (ibid.) and substantially as it would have been had defendant and his counsel not been erroneously excluded from the hearings. I agree with the federal circuit court’s assessment in Thompson: we simply cannot credit this record, and an appellate court cannot serve its review function when it cannot be satisfied that the record is complete as to the relevant facts. (Thompson, supra, 827 F.2d at p. 1261.)
IV.
Defendant asserts in related contentions that the ex parte procedure violated his state and federal constitutional rights to be present and to be represented by counsel. The majority relegates these substantial claims to a cursory paragraph in which it appears to concede the existence of the errors, but concludes that they were harmless beyond a reasonable doubt for the same reasons set forth earlier in its opinion. (Maj. opn., ante, at pp. 268-269, citing Rushen v. Spain (1983) 464 U.S. 114, 118-119 [104 S.Ct. 453, *299 455-456, 78 L.Ed.2d 267] (per curiam); People v. Wright (1990) 52 Cal.Sd 367, 402-403 [276 Cal.Rptr. 731, 802 P.2d 221]; Hogan, supra, 31 Cal.3d 815, 849-850; and Knighten, supra, 105 Cal.App.3d 128, 132-133.) The four cases relied upon by the majority, however, are inapposite: none concerned a situation, like this one, in which the erroneous absence of a defendant and his or her counsel created an incomplete record of a critical and contested trial hearing, and hence the cases do not stand for the proposition that a defect such as we address here can be found harmless beyond a reasonable doubt.
In any event, the majority again fails to acknowledge, much less abide by, the law set out in the cases upon which it relies. As noted above, the majority’s cited cases stress that error such as this, if properly subjected to harmless error analysis, is presumed to be prejudicial, and “[o]nly the most compelling showing to the contrary will overcome the presumption.” (Knighten, supra, 105 Cal.App.3d 128, 133, italics added.) In Knighten, supra, 105 Cal.App.3d 128, a compelling showing did overcome the presumption of prejudice: defense counsel, who had been excluded erroneously from an initial exchange between the court and the jury, immediately thereafter participated in further open court proceedings during which counsel’s “suggestions and objections were carefully heeded” (id., at p. 134), thereby eliminating any possibility of prejudice. By contrast, in Hogan, supra, 31 Cal.3d 815, 850, a similar error resulted in the jury’s receiving inadmissible and prejudicial information concerning the defendant’s reluctance to undergo a polygraph examination, and hence no compelling showing necessary to overcome the presumption of prejudice could be made. Once again, the majority provides no indication that it has approached the question of harmless error with the traditional Knighten principles in mind.
V.
The majority exhorts this dissenting opinion to “come to grips with the record’s strong factual base for our conclusion that the error was harmless.” (Maj. opn., ante, at p. 266, fn. 3.) As I have observed (and as the Ninth Circuit noted under the same circumstances in Thompson, supra, 827 F.2d 1254, 1261), the record here is irremediably incomplete; any perceived strength is illusory and cannot be relied upon.[10]
Neither the majority nor any of the briefs cites any appellate decision that has found harmless the erroneous exclusion of the defense from a crucial *300 portion of jury selection proceedings, and my own research similarly has not uncovered any such ruling. Today’s opinion carries the dubious distinction of being the first such decision. Because I find the majority’s reasoning unpersuasive and inconsistent with established law, I dissent.
Kennard, J., concurred.
Appellant’s petition for a rehearing was denied November 15, 2000, and the opinion was modified to read as printed above. George, C. J., and Kennard, J., were of the opinion that the petition should be granted.

Decisions from the Sixth and Seventh Circuits of the United States Courts of Appeals, reflecting the minority view, generally have permitted the use of ex parte hearings in this context, and have left to the court’s discretion whether to include the defendant’s counsel in that procedure. (United States v. Davis (6th Cir. 1987) 809 F.2d 1194, 1201; U.S. v. Tucker (7th Cir. 1988) 836 F.2d 334, 340.) Even so, the court in Tucker expressed a preference for holding adversarial, rather than ex parte, hearings in this context, “whenever possible.” (Tucker, at p. 340.) By contrast, another minority group of cases—actually a subset of the majority rule—requires an evidentiary hearing after a prima facie case of group bias has been established. (E.g., State v. Green (1989) 324 N.C. 238 [376 S.E.2d 727, 728]; Goode v. Shoukfeh (Tex. 1997) 943 S.W.2d 441, 452] [civil case, stating the general rule].)

For example, if the prosecution stated that it challenged a juror because the juror was a neighbor of or lived near the defendant, a trial judge unfamiliar with the juror’s neighborhood might not be able to determine whether this was so, but defense counsel (possibly assisted by the defendant) might be able to shed light upon the matter.

In the present matter, defendant has not asserted that the ex parte and in camera procedure employed below violated his Sixth Amendment right to a public trial. The voir dire process has been recognized as being among the proceedings to which the right to a public trial and public access rights apply. (E.g., Press-Enterprise Co. v. Superior Court of Cal. (1984) 464 U.S. 501 [104 S.Ct. 819, 78 L.Ed.2d 629] [First Amendment context, criminal case voir dire].) And under both the Sixth and First Amendments, a trial court is not permitted to close a trial proceeding unless the court first “provides notice to the public on the question of closure and after a hearing finds that (i) there exists an overriding interest supporting closure; (ii) there is a substantial probability that the interest will be prejudiced absent closure; (iii) the proposed closure is narrowly tailored to serve that overriding interest; and (iv) there is no less restrictive means of achieving that overriding interest.” (NBC, supra, 20 Cal.4th at p. 1181; see also id.., at p. 1205 [same rules apply in First Amendment and Sixth Amendment contexts].) There is no indication that the trial court considered any of these factors in the present case, or that it made any such finding.

Because the majority agrees that on these facts the prosecution’s stated reasons for the exercise of peremptory challenges did not implicate trial strategy, the majority’s suggestion that the need to protect trial strategy may constitute an overriding interest that may justify ex parte or in camera proceedings is dictum.

Accord, People v. Hogan (1982) 31 Cal.3d 815, 849-850 [183 Cal.Rptr. 817, 647 P.2d 93] (Hogan) (lead opn. of Bird, C. J.) (quoting and applying the same standard, and finding reversible error); see also People v. Lozano (1987) 192 Cal.App.3d 618, 624-626 [237 Cal.Rptr. 612] (same); People v. Dagnino (1978) 80 Cal.App.3d 981, 989 [146 Cal.Rptr. 129] (same). In Dagnino, supra, the court, after quoting from Glasser v. United States (1942) 315 U.S. 60, 76 [62 S.Ct. 457, 467-468, 86 L.Ed. 680], and Mempa v. Rhay (1967) 389 U.S. 128, 134 [88 S.Ct. 254, 256-257, 19 L.Ed.2d 336], explained: “[W]hile denial of counsel at the ‘critical stage’ of a criminal proceeding is not necessarily prejudicial as a matter of law, prejudice will be presumed where the denial ‘may have affected’ the substantial rights of the accused. Only the ‘most compelling showing’ to the contrary will suffice to overcome the presumption, and courts will not engage in ‘nice calculations’ in malting such a determination. And of course the foundational constitutional requirement, in determining the harmlessness of such error, is Chapman v. California’s mandate that the ‘court must be able to declare a belief that [the denial of counsel] was harmless beyond a reasonable doubt.’ ” (People v. Dagnino, supra, 80 Cal.App.3d at p. 989, italics in original.)

The trial judge now serves as a member of the federal judiciary.

The futility of a remand here is additionally demonstrated by Alcantar, supra, 897 F.2d 436. There, the court remanded for an after-the-fact hearing only two years after erroneous ex parte Batson proceedings. On remand, the trial court reported that “[t]here [is] simply no way in this case, given the two-year delay before the hearing, for the court and the parties to reconstruct the circumstances as they existed at the time of trial.” (Alcantar, at p. 439.) Nonetheless, the trial court purported to affirm its prior decision that the peremptory challenges were proper, and declined to order a new trial. On appeal from the remand, the Ninth Circuit reversed, holding that the hearing held two years after the jury selection and trial did not provide a “meaningful process for testing whether the prosecutor’s reasons for striking the [minority] jurors were racially neutral.” (Id.., at p. 438.)

The majority also attempts to distinguish Thompson by observing that there, unlike the present case, the prosecutor once mentioned race when articulating her reasons for one of the challenges. (Maj. opn., ante, at p. 268.) This observation is accurate, but irrelevant to the issue we consider here. The court in Thompson mentioned the cited circumstance in the course of illustrating the necessity for defense counsel to be present in order to be able to probe the prosecutor’s reasons and create an adequate record (Thompson, supra, 827 F.2d at p. 1260), and as noted above, the court in Thompson found reversible error because the trial court erroneously held an ex parte hearing—and not because the prosecution’s challenges were themselves improper. Here as well, we focus upon the adequacy of the record in light of the erroneous ex parte procedure. The circumstance that the prosecutor in the present case did not mention race as a reason for any challenge has no bearing on the question of the adequacy of the record for purposes of appellate review.

The majority’s assessment of the strength of the record is erroneous in yet another respect. The majority asserts that we can have confidence in the record because the trial judge below showed himself to be “diligent, prepared, knowledgeable, and engaged” in the Wheeler proceedings in both this case and in another recently decided matter. (Maj. opn., ante, at p. 268.) As the Ninth Circuit explained in Thompson supra, 827 F.2d 1254, “[o]ur trust in the learned [trial] judge” does not permit us to draw the inference adopted by the majority: “[/]/' *300 we are to review the [trial] judge’s decision, we cannot affirm simply because we are confident he must have known what he was doing. We can only serve our function when the record is clear as to the relevant facts, or when defense counsel [is present at the Wheeler/Batson hearing and] fails to point out any such facts after learning of the prosecutor’s reasons.” (Id., at p. 1261, italics added.)