[925 NE2d 868, 899 NYS2d 66]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK OCHOA, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL FIGUEROA, Appellant.

Argued January 13, 2010; decided February 16, 2010

**POINTS OF COUNSEL**

*Center for Appellate Litigation,* New York City (*Carol A. Zeldin* and *Robert S. Dean* of counsel), for appellant in the first above-entitled action. I. Appellant was denied due process and a fair trial through the erroneous admission of numerous prior consistent statements of key prosecution witnesses, which improperly bolstered the People's case and concomitantly undermined the defense. (*People v McDaniel,* 81 NY2d 10; *People v McClean,* 69 NY2d 426; *People v Seit,* 86 NY2d 92; *People v Davis,* 44 NY2d 269; *People v Melendez,* 55 NY2d 445; *People v Ciaccio,* 47 NY2d 431; *People v Nicholson,* 168 AD2d 574; *People v Huertas,* 75 NY2d 487; *People v Crimmins,* 36 NY2d 230; *People v Brown,* 98 NY2d 226.) II. The trial court committed reversible error by conducting an ex parte conference with a deliberating juror, in response to the juror's note, in the absence of appellant and his counsel and without providing prior notice of the note to counsel. (*People v Kisoon,* 8 NY3d 129; *People v O'Rama,* 78 NY2d 270; *Rogers v United States,* 422 US 35; *United States v Ronder,* 639 F2d 931; *People v Kadarko,* 56 AD3d 102; *People v Starling,* 85 NY2d 509; *People v Cain,* 76 NY2d 119; *People v Mehmedi,* 69 NY2d 759; *Snyder v Massachusetts,* 291 US 97; *French v Jones,* 332 F3d 430.)

*Office of the Appellate Defender,* New York City (*Rosemary Herbert* and *Richard M. Greenberg* of counsel), for appellant in the second above-entitled action. I. Michael Figueroa's statutory and constitutional rights to presence and the assistance of counsel were violated when the trial court responded to the jury foreman's note expressing discomfort reading "this verdict" in the absence of, and without prior notice to, Mr. Figueroa and his attorney. (*People v O'Rama,* 78 NY2d 270; *People v Ciaccio,* 47 NY2d 431; *Snyder v Massachusetts,* 291 US 97; *People v Mehmedi,* 69 NY2d 759; *United States v Gagnon,* 470 US 522; *United States v Jones,* 381 F3d 114; *People v Mullen,* 44 NY2d 1; *Dallio v Spitzer,* 343 F3d 553; *People v Ramos,* 99 NY2d 27; *French v Jones,* 332 F3d 430.) II. Michael Figueroa was denied due process and a fair trial as a result of the trial court's erroneous admission of numerous prior consistent statements of the prosecution's key witnesses. (*People v Crimmins,* 36 NY2d 230.)

*Robert T. Johnson, District Attorney,* Bronx (*Jason S. Whitehead, Joseph N. Ferdenzi* and *Karen Swiger* of counsel), for respondent in the first and second above-entitled actions. I. Defendants were not deprived of their rights to be present and to the assistance of counsel when the trial court communicated with the jury foreperson in their and their counsel's absence because the court's action was ministerial. (*People v Harris,* 76 NY2d 810; *People v Tarsia,* 50 NY2d 1; *People v O'Rama,* 78 NY2d 270; *People v Patterson,* 39 NY2d 288; *People v Agramonte,* 87 NY2d 765; *People v Bonaparte,* 78 NY2d 26; *People v Ciaccio,* 47 NY2d 431; *People v Hameed,* 88 NY2d 232; *People v Starling,* 85 NY2d 509; *People v Velasquez,* 1 NY3d 44.) II. Defendants' claim that the prosecution improperly elicited prior consistent statements is unpreserved as to Michael Figueroa and altogether meritless. (*People v Romero,* 7 NY3d 911; *People v Tevaha,* 84 NY2d 879; *People v West,* 56 NY2d 662; *People v Love,* 57 NY2d 1023; *People v Buckley,* 75 NY2d 843; *People v Gray,* 86 NY2d 10; *People v Voliton,* 83 NY2d 192; *People v Iannelli,* 69 NY2d 684; *People v McClean,* 69 NY2d 426; *People v McDaniel,* 81 NY2d 10.)

## OPINION OF THE COURT

Pigott, J.

Following a joint trial, defendant Mark Ochoa was found guilty of one count of robbery in the second degree, and defendant Michael Figueroa was convicted of two counts of robbery in

the second degree and one count of criminal possession of a weapon arising from events that occurred in January of 2003.

Fernando Cruz had taken his video game console to Madeline Ruballo's sixth-floor apartment, meeting up with defendants. According to later testimony, the four of them spent the night smoking crack cocaine. At some point, Cruz decided to take his console and leave. As Cruz approached the door, Figueroa pulled out a box cutter, reached for the console, and demanded that Cruz give it to him. Cruz and Figueroa began struggling and ended up on the sixth-floor landing. Ochoa then allegedly pulled Cruz's jacket over his head, causing his wallet to fall to the floor. Figueroa took the console and fled, with Ochoa following. Cruz claimed over $200 was taken from his wallet as well.

Following their arrest, defendants were charged, on an "acting in concert" theory, with the crimes of robbery in the first degree, robbery in the second degree (two counts), robbery in the third degree (two counts), criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree.

Cruz and Ruballo testified at trial, and were subjected to vigorous cross-examination by defense counsel, who were able to elicit several inconsistencies in their testimony. Defense counsel impeached Cruz with false statements he had made in his two appearances before the grand jury, and confronted Ruballo with statements to police that she later admitted were untrue. The prosecutor's redirect examination of those witnesses forms the basis of one of the issues raised on this appeal.

The other issue involves the trial judge's handling of a note he received from the foreperson an hour after the jury had reached its verdict.

Prior to the judge's receipt of that note, the jury had sent three other notes either asking for further instruction or advising the court that it was deadlocked. In each of those instances, the court ensured that defendants and counsel were present, read the note aloud, and then addressed its substance before the jury. The day of the verdict, the court received two more notes. The first, which was written at 1:25 P.M., stated, "Have reached a verdict." The second, a personal note from the foreperson, was written at 2:20 P.M. and stated, "Your Honor, I do not feel comfortable reading this verdict."

The judge met with the foreperson without informing defense counsel beforehand. However, immediately afterward, in open court, the judge explained:

"The Court has received two notes, one, they reached a verdict, which you know. You . . . gentlemen saw one personal note from the foreperson that he doesn't feel comfortable reading the verdict. For the record, the Court asked the foreperson to come down, he sat right here and the foreperson was inquired into why he didn't feel comfortable. He said, well, he didn't want to go through and have to say what the verdict was, never telling me [the court] the verdict. I told him the way it works. The clerk asks him and says, Have you reached a verdict. Yes. As to the first count on Mr. Figueroa, guilty or not guilty. As to the first count on Mr. Ochoa, and I explained to him how it goes and all he has to do is answer guilty or not guilty. And then he seemed relieved and he said, 'Oh, okay, fine.' "

After being shown the foreperson's note, neither defense counsel voiced an objection to the manner in which the court addressed the juror's concern. Following the verdict, defense counsel requested that the jury be polled, and the foreperson stated that the verdict as to each defendant was his verdict. On appeal, both convictions were affirmed.

In *Ochoa* the Appellate Division rejected defendant's argument that the prosecutor's redirect examinations of Cruz and Ruballo constituted improper bolstering and further concluded, as to the foreperson's note, that counsel's failure to object or seek other relief from the court relative to the ex parte communication with the foreperson constituted a waiver of that argument (*see People v Ochoa*, 57 AD3d 342, 343-344 [1st Dept 2008]). One justice dissented and subsequently granted defendant leave to appeal to this Court.

In *Figueroa*, the Appellate Division addressed the juror note issue and held, as to the court's ex parte communication with the foreperson, that its action was ministerial and therefore neither defendant nor defense counsel had a right to be present, and, in any event, counsel "was required to request a further inquiry of the foreperson or otherwise preserve a claim of error" (*People v Figueroa*, 48 AD3d 324, 325-326 [1st Dept 2008]). A Judge of this Court granted leave (12 NY3d 816 [2009]). We now affirm in both appeals.

## Improper Bolstering Claim

The trial testimony of the two individuals who were present at the time of the crimes, and who testified against defendants,

was not a model of consistency. Neither Cruz nor Ruballo wanted the police to know that they had been smoking crack cocaine with defendants the night of the incident. On cross-examination by defense counsel, Cruz conceded that he testified before the grand jury that the robbery occurred as he and Ruballo walked into the building, that a bat was used during the incident, and that he had never associated with defendants prior to the incident—all of which was untrue. In an attempt to explain the inconsistency between his trial testimony and grand jury testimony, Cruz testified that he was "confused" by certain of the questions asked of him before the grand jury.

On redirect examination, the prosecutor sought to question Cruz about what he was "confused" about during his grand jury testimony. Counsel for Ochoa objected, stating that the prosecutor could not rehabilitate Cruz with a prior consistent statement. The trial court overruled the objection, and allowed the prosecutor to ask Cruz whether, at the time of his grand jury testimony, he was "confused" about what item he possessed on the day of the incident, whom he visited that day, how he was injured and who injured him.

█ We conclude that these questions on redirect were addressed to matters raised by defense counsel on cross-examination, and "did no more than to explain, clarify and fully elicit a question only partially examined by the defense" (*People v Regina*, 19 NY2d 65, 78 [1966]; *see* Prince, Richardson on Evidence § 6-501 [Farrell 11th ed]).

█ The prosecutor's redirect examination of Ruballo was also proper. Defense counsel elicited testimony from Ruballo that she lied in her written statement to police when she stated that defendants followed her and Cruz into the building and mugged them, that one of the perpetrators took $50 from Cruz, and that Figueroa pushed her during the encounter.

On redirect, the prosecutor sought to clarify what was correct and incorrect about the statements. Ochoa's counsel objected that a prior consistent statement could not be elicited except upon a claim of recent fabrication. Over defense counsel's objection, the prosecutor elicited from Ruballo that the name on the statement was hers, and that the pedigree information, the apartment address and where the altercation occurred were correct. She also testified that, relative to the statement, the names of the perpetrators and the victim were correct, but that she lied when she stated that $50 had been taken, when she said

that she and Cruz were attacked upon entering the building, and when she told police that Figueroa pushed her.

The prosecutor's redirect examination did not constitute impermissible bolstering, as she was seeking merely to fill in the gaps that defense counsel left during cross-examination, after defense counsel implied that Ruballo's entire statement to police was a lie. "Where only a part of a statement is drawn out on cross-examination, the other parts may be introduced on redirect examination for the purpose of explaining or clarifying that statement" (*People v Torre*, 42 NY2d 1036, 1037 [1977], citing *Regina*, 19 NY2d at 70). Therefore, the trial court did not abuse its discretion in allowing the prosecutor to ask Ruballo to clarify which parts of her statement she claimed were true, and which were not true.

## Juror's Note

Defendants contend that the trial court's failure to apprise defense counsel of the contents of the note prior to speaking with the foreperson, allow counsel an opportunity to be heard as to how to respond to the note, and permit defendants to be present during the court's communication with the foreperson violated CPL 260.20 and 310.30. The former provision requires, with certain exceptions, that "[a] defendant must be personally present during the trial of an indictment." The latter provision provides:

> "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper."

The purpose of the "notice" requirement is twofold. First, it ensures counsel's presence when the court responds to the jury's request for instructions or other information and, second, it "ensure[s] that counsel has the opportunity to be heard *before* the response is given" (*see O'Rama*, 78 NY2d at 277 [citations omitted]). Generally, a trial court's failure to disclose the contents of a juror note, which effectively prevents defense

counsel from meaningful participation in the proceedings, constitutes "a significant departure from the organization of the court or the mode of proceedings prescribed by law" (*id.* at 279 [citations and internal quotation marks omitted]).

The foreperson's personal note was ambiguous and, given its language, could have been substantive. As such, it may have been more prudent for the judge to follow the procedures specified in *O'Rama* before responding to it. Nonetheless, we conclude that the judge acted within his discretion by seeking clarification of the note's meaning before notifying defense counsel (*see People v Lykes*, 81 NY2d 767, 770 [1993]). The substance of the note related only to the foreperson's concern about the manner in which that verdict was to be delivered, and thus was nothing more than an inquiry of a ministerial nature (*see generally People v Hameed*, 88 NY2d 232, 240-241 [1996]; *People v Collins*, 99 NY2d 14, 17-18 [2002]), unrelated to the substance of the verdict (*see People v Harris*, 76 NY2d 810, 812 [1990]). As a result, the judge was not required to notify defense counsel nor provide them with an opportunity to respond, as neither defense counsel nor defendant could have provided a meaningful contribution.

Accordingly, the orders of the Appellate Division relative to both appeals should be affirmed.

JONES, J. (dissenting). Because I believe that the trial court committed reversible error with respect to the two issues before this Court, I respectfully dissent. I will first address the improper bolstering issue.

The majority, in describing the testimony of Cruz and Ruballo, states that it was "not a model of consistency" (majority op at 186). That is an understatement. The witnesses' testimony before the grand jury and at the suppression hearing, statements given to the investigating police officers, and prior written statements were riddled with inconsistencies. As a result, both witnesses were impeached when cross-examined by defense counsel, thereby casting doubt on whether a robbery actually occurred.

Over the objection of the defense, the prosecutor was permitted to introduce the witnesses' prior consistent statements under the guise of rehabilitation. The prosecutor, in the redirect examination of Cruz, questioned him about his prior statements which conformed to his trial testimony, asking him whether those statements were correct. Even more egregious, the

prosecutor was permitted to go through Ruballo's prior written statement given to the police "to clarify what's incorrect and what is correct." As pointed out in the Appellate Division dissent (*People v Ochoa*, 57 AD3d 342, 347 [1st Dept 2008]), by characterizing some allegations as false, the prosecutor implied that the remaining statements were true.

It is well settled that a witness who has been impeached cannot be rehabilitated by use of a prior consistent statement, unless the opposing party suggests that the witness's account is a recent fabrication (*see People v McDaniel*, 81 NY2d 10 [1993]; *People v McClean*, 69 NY2d 426 [1987]; *People v Davis*, 44 NY2d 269 [1978]). In such a case, a consistent statement made before the motive to fabricate arose may be admissible (*see McDaniel*, 81 NY2d at 16; *McClean*, 69 NY2d at 428; *Davis*, 44 NY2d at 277-278). As stated by one commentator, "[e]ven when the witness' credibility is attacked by proof of inconsistent statements, the witness' credibility may not be supported by proof of consistent statements. . . . The inconsistency is not removed by the fact that the witness has also made consistent statements, and consequently the consistent statements may not be shown" (Prince, Richardson on Evidence § 6-503 [Farrell 11th ed]).

In rejecting defendants' claims that the trial court permitted improper bolstering of the testimony, the majority calls this redirect examination proper rehabilitation. In support of this conclusion, they rely on *People v Regina* (19 NY2d 65, 78 [1966]) and *People v Torre* (42 NY2d 1036, 1037 [1977]), both of which can be distinguished from the instant case. In *Regina*, the prosecution witness was asked one question to clarify an answer given on cross-examination. On cross-examination, a detective was asked whether he made any notes "that night," and he replied "[n]o" (19 NY2d at 77). On redirect by the prosecutor, the detective was asked if he had ever made any notes of the occurrence and he answered that he had done so three days later. In *Torre*, the Court held that where only part of a statement is drawn out on cross-examination, the other parts may be introduced on redirect examination so that the statement may be explained or clarified.

In the instant case, the court permitted improper bolstering. This was not a case of clarifying or explaining a statement only partially examined by opposing counsel. This was an attempt to recast the entire testimony of two witnesses who had given many versions of the crime and surrounding events.

The fact that the court permitted such bolstering by the prosecutor severely prejudiced the defendants and cannot be viewed as harmless error in a case in which the evidence was not overwhelming and depended on the credibility of two witnesses who were admitted drug users and in a place Ruballo described as a "crack house." This error standing alone is a basis for reversal where preserved.

Next I turn to the issue of the juror note. By conducting an ex parte conference with a deliberating juror, in response to the juror's note, without providing prior notice of the note to counsel, the trial court erred.

CPL 310.30 sets forth the procedure to be followed by the court when a note is received from a deliberating jury. The instruction is very clear and it would have been very simple for the court to have followed the dictates of this statute. The majority excuses the failure to do so by saying that the judge acted within his discretion and that this was "nothing more than an inquiry of a ministerial nature" (majority op at 188, citing *People v Hameed*, 88 NY2d 232 [1996]). *Hameed* was wholly different from the case at bar. It involved a juror's inquiry about whether he would be permitted to attend church while the jury was sequestered. It is the only case cited by the majority which is clearly a ministerial inquiry. None of the other cases relied upon by the majority are on point. They are cases in which defendant was not present but defense counsel was present or had an opportunity to have input in the jury instruction. In *People v Lykes* (81 NY2d 767 [1993]), the judge sent a note to the jury seeking clarification of its inquiry. Unlike the instant case, both defendant and defense counsel were given an opportunity to participate before any instruction was given to the jury. In *People v Collins* (99 NY2d 14 [2002]), the defendant was not present during the drafting of the verdict sheet but his counsel was present (*see also People v Harris*, 76 NY2d 810 [1990] [where the judge along with the prosecutor and defense counsel went to the door of the jury room and the judge asked whether the request for the readback of testimony was for the victim]).

Whether a jury note is a ministerial or substantive inquiry can vary depending on the circumstances of the particular case. In this case, where the note came one hour after the jury had announced that it had reached a verdict, following three days of deliberation and two notes declaring a deadlock, this court had every reason to believe that the verdict was a problem to at least one juror.

In addition, the action taken by the court cannot be justified by facts which come to light as a result of the inquiry. The court's response must be driven by inferences which can reasonably be drawn before the inquiry is conducted. Under these circumstances it was error to fail to treat the note as a potentially "important, substantive juror inquiry" and thus apply the safeguards mandated by *People v O'Rama* (78 NY2d 270, 279-280 [1991]).

Accordingly, I would reverse the orders of the Appellate Division and remit to Supreme Court for retrial.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge JONES dissents and votes to reverse and order a new trial in a separate opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

In each case: Order affirmed.