*13 OPINION OF THE COURT
Kaye, J.
This appeal of a conviction for rape and related crimes centers on two exceptions to the evidentiary rule against use of prior consistent statements to buttress a witness’ testimony. We hold that evidence of prompt outcry was admissible but that other pretrial statements by the complainant, introduced by the prosecution to rehabilitate her after impeachment by the defense with prior inconsistent statements, were not. Moreover, on this record, we cannot say the errors were harmless. Accordingly, a new trial is necessary.
I.
On February 10, 1989, defendant spent the night at the home of Jane Doe,[1] with whom he had been intimate for several months. Doe lived with her 11-year-old daughter, Mary, and two younger sons, ages six and four (Mary’s stepbrothers). Also living in the Brooklyn apartment was Linda Jones, an elderly woman. Doe was then separated from her husband, the boys’ father.
Mary usually slept in a bedroom next to her mother’s but when defendant stayed over, Doe had Mary sleep in the living room, for privacy. According to Mary’s testimony, on February 10, defendant awakened her in the middle of the night, pulled oif her tights and underwear and touched her breasts. He also rubbed his penis against her vagina for a minute or two and then "went in a little bit”. Defendant pushed Mary’s shoulder and threatened that if she told he would do something bad to her. In the morning, Mary allegedly reported the incident to her mother, but because Doe did not believe her daughter, she took no action.
Mary testified that a similar incident occurred one week later, on February 17. That night, Mary’s two young friends slept over. The three children slept in the living room while Mary’s brothers slept in the bedroom with their mother and defendant. According to Mary, defendant again woke her up, fondled her breasts and vagina, and "went in a little bit” with his penis.
One of the friends sleeping over, then about seven years old, testified that although it was dark, she saw defendant touch her friend’s chest and "private spot” between her legs, and *14 that defendant stuck his "d-i-c-k” in her. Jones testified that she heard "whining” in the living room, went there, turned on the lights and saw defendant sitting on the couch, fully clothed. On other occasions that night, Jones heard noises in the living room and when she went to investigate, saw defendant.
The next day Mary told her mother what had allegedly happened but again Doe did nothing. When Doe’s husband visited his sons on February 19, Mary told him what had happened and he informed the police.
On March 6, Doe took Mary to the hospital to be examined by a pediatrician. Although examining the child, the physician did not have Mary remove her clothes, but instead set up an appointment with a gynecologist. Mary did not keep that appointment.
The Challenged Statements
Doe’s Testimony
Questioning Doe about the first episode, the prosecutor asked if Mary had "occasion to make a complaint to you” the next morning. Doe responded affirmatively, and when the follow-up question was posed — "what was the substance of that complaint?” — defendant objected. At sidebar, defendant protested that although the fact of a complaint was admissible as prompt outcry, the content of the complaint was not. The court overruled the objection, and Doe testified that her daughter reported that defendant "bothered her,” "attacked her” and "tried to molest her.”
A similar question was posed about the second incident. After Doe testified that her daughter had made a complaint, the prosecutor elicited, over objection, that the nature of the complaint was that defendant tried to "molest her.” Defendant moved to strike the latter response, the objection was sustained, and defendant did not ask for a curative instruction. Later, the court gave the jury a limiting instruction on prompt outcry testimony, explaining that it was admitted only to show that a complaint was made, not for its truth.
Mary’s Testimony
On direct examination, Mary testified that she told the police and an Assistant District Attorney that defendant had rubbed her breasts and vagina. Defendant objected that this *15 was an inadmissible prior consistent statement. The court recognized that the prosecutor was anticipating the need to rehabilitate his witness, and instructed him to "get off that point” and save it for redirect, if necessary. When defendant asked that the answer be stricken, the court declined, reasoning that it would merely highlight the statement.
On cross-examination, defendant impeached Mary with several prior statements that were inconsistent with her trial testimony. For example, she admitted telling a police officer two days after the second incident that defendant had merely touched her on the chest and lower stomach. She also conceded that when discussing the case with a detective four days after the second episode, she made no mention of the alleged February 10 rape, and regarding February 17, all she said was that defendant touched her on the chest, stomach and legs. Mary was similarly impeached with statements made two weeks later at the precinct to the detective and an Assistant District Attorney. She also admitted telling the pediatrician that she was merely rubbed over her clothes.
On Mary’s redirect testimony, the prosecutor elicited a series of prior statements more consistent with her trial testimony. The child testified that after initially telling the detective and the Assistant District Attorney at the precinct that she had been fondled on the chest and vagina, she told them on a separate occasion that night that defendant also rubbed his penis against her vagina. Mary also testified that she told her mother on the mornings following each incident that defendant had rubbed his penis against her vagina. Finally, the child testified that she told the Grand Jury that defendant’s penis was rubbed against her vagina.
Although the trial court sustained an objection to the Grand Jury statement and instructed the jury to disregard the question and answer, the court overruled defendant’s objections to the other prior consistent statements. Defendant argued that his impeachment did not open the door to rehabilitation with consistent statements, unless the prosecution was seeking to rebut a claim of recent fabrication, which assertedly was not the case. The court ruled that in light of the cross-examination, the statements were admissible.
The jury convicted defendant of forcible and statutory rape for the February 10 incident, statutory rape for February 17, several counts of sexual abuse on each date, and endangering the welfare of a child. On appeal, the Appellate Division *16 acknowledged that some of the statements were improperly admitted, but held that in light of the "overwhelming evidence” of guilt, the errors were harmless.
We disagree that the evidence of rape was overwhelming and now reverse and order a new trial.
II.
A witness’ trial testimony ordinarily may not be bolstered with pretrial statements (People v McClean, 69 NY2d 426, 428; see, People v Singer, 300 NY 120, 123-124; People v O’Sullivan, 104 NY 481, 486). Several rationales underlie the rule: untrustworthy testimony does not become less so merely by repetition (People v McClean, 69 NY2d, at 428, supra); testimony under oath is preferable to extrajudicial statements (Crawford v Nilan, 289 NY 444, 451); and litigations should not devolve into contests as to which party could obtain the latest version of a witness’ story (id.).
This case involves two exceptions to the rule — first, evidence of prompt outcry and second, prior consistent statements used to rebut a charge of recent fabrication. As discussed below, although we do not find error in the admission of prompt outcry testimony, we reach a contrary conclusion with regard to Mary’s pretrial statements.
Prompt Outcry
In this State, evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place (see, People v Rice, 75 NY2d 929, 931; People v Deitsch, 237 NY 300, 304; People v O’Sullivan, 104 NY, at 486-487; Richardson, Evidence § 292 [Prince 10th ed]). Historically, the doctrine evolved from the common-law requirement of "hue and cry,” where all victims were required to prove they immediately alerted the community that a crime had occurred (State v Hill, 121 NJ 150, 157, 578 A2d 370, 374; Note, A Matter of Time: Evidence of a Victim’s Prompt Complaint in New York, 53 Brooklyn L Rev 1087, 1089 [1988]).
The contemporary rationale for permitting prompt outcry evidence is that some jurors would inevitably doubt the veracity of a victim who failed to promptly complain of a sexual assault, such conduct being "natural” for an "outraged female.” (People v Rice, 75 NY2d, at 931, supra; People v O’Sullivan, 104 NY, at 486, supra.) Although recent studies *17 have suggested that it may not be unusual for a rape victim to withhold complaint (see, People v Bennett, 79 NY2d 464, 471-472; People v Taylor, 75 NY2d 277, 285-287 [discussing Rape Trauma Syndrome]), the admissibility of prompt outcry remains viable because "our judicial process cannot remove from every juror all subtle biases or illogical views of the world. The fresh-complaint rule responds to those jurors on their own terms.” (State v Hill, 121 NJ, at 164, 578 A2d, at 377, supra.)
One limitation on admissibility of such evidence is that, as its name suggests, the complaint must have been made promptly after the crime, and another is that only the fact of a complaint, not its accompanying details, may be elicited. Defendant argues that both conditions were transgressed.
A complaint is timely for purposes of the prompt outcry exception if made "at the first suitable opportunity” (People v O’Sullivan, 104 NY, at 486, supra; Richardson, Evidence § 292 [Prince 10th ed]). "There can be no iron rule on the subject. The law expects and requires that it should be prompt, but there is and can be no particular time specified.” (Higgins v People, 58 NY 377, 379.) Thus, promptness is a relative concept dependent on the facts — what might qualify as prompt in one case might not in another.
Here, on two occasions, a child was allegedly awakened during the night and sexually assaulted. The child’s reports to the mother, on the mornings following each incident, unquestionably satisfy the first-suitable-opportunity requirement. The child could hardly be expected to awaken her mother immediately and possibly confront her alleged attacker. As the Appellate Division correctly held, however, statements made by the complainant days later — for example, to the police or prosecutor — could not be admitted as prompt outcry in these circumstances.
Defendant next contends that the details of the complaints were improperly admitted. Our cases have uniformly held that only the fact of a complaint, not its details, is admissible (People v Rice, 75 NY2d, at 932, supra [description of attacker erroneously admitted]; People v Deitsch, 237 NY, at 304, supra [description]; Baccio v People, 41 NY 265, 271). The distinction is logical, for the limited purpose of the exception is to show that a prompt complaint had been made, thereby negating the tendency of some jurors to doubt the victim in the absence of such evidence (see, People v Rice, 75 NY2d, at 932, supra).
*18 In the present case, no impermissible details were adduced. The prosecutor’s initial question to Doe, in each instance, was whether her daughter had made a complaint. The witness’ answers — "yes”—did not convey that the "complaint” related to a sexual attack, and thus the prosecutor was entitled to elicit the nature of the complaint, which was not apparent from the context. Doe’s responses — that her daughter reported being bothered, attacked, molested — did not exceed the allowable level of detail.
In sum, we conclude that Doe’s testimony about her conversations with Mary on the mornings following each incident was properly admissible under the prompt outcry exception.
III.
We next turn to a second exception to the rule against admission of prior consistent statements. By contrast to the foregoing discussion on prompt outcry, we conclude that reversible error was committed in the admission of bolstering pretrial statements.
If upon cross-examination a witness’ testimony is assailed— either directly or inferentially — as a recent fabrication, the witness may be rehabilitated with prior consistent statements that predated the motive to falsify (see, People v McClean, 69 NY2d 426, supra; People v Davis, 44 NY2d 269, 277; People v Singer, 300 NY 120, 123). This exception is rooted in fairness; it would be unjust to permit a party to suggest that a witness, as a result of interest, bias or influence, is fabricating a story without allowing the opponent to demonstrate that the witness had spoken similarly even before the alleged incentive to falsify arose.
Of course, not every inconsistency developed on cross-examination implies that the witness’ testimony is perjurious (see, People v Davis, 44 NY2d, at 277, supra). "Mere impeachment by proof of inconsistent statements does not constitute a charge that the witness’ testimony is a fabrication.” (People v McClean, 69 NY2d, at 428, supra.) Moreover, in applying the exception, it is important to identify when the motive to fabricate arose. In some cases, the motive may exist from the outset, and thus rehabilitation with consistent statements may be impossible. For example, in Davis, we held that a postarrest police report was inadmissible to rehabilitate an officer when defendant’s theory was that the case was trumped up from the beginning (44 NY2d, at 278, supra).
*19 Here, as defendant conceded at trial, his cross-examination of Mary went beyond mere impeachment and sought to establish that her story was fabricated. The questioning, however, established no motive for the child to lie from the outset, but suggested that she was influenced by her stepfather — defendant’s rival for her mother’s affection — by the police and by the District Attorney. These themes were repeated in defendant’s summation. Accordingly, only Mary’s statements antedating these alleged influencing forces could be admitted to shore up her testimony.
Mary’s statements to her mother the day after each episode were thus properly admitted to rebut the implied charge of fabrication. Mary had not spoken to her stepfather about the attacks until two days after the second incident; her discussions with the police came even later. Although these rehabilitating statements — that defendant had rubbed his penis against her vagina — may have exceeded the scope of permissible detail under the prompt outcry exception, they were used here to rebut the suggestion on cross-examination that Mary turned a fondling incident into rape at the behest of her stepfather.
Mary’s statements to the police and District Attorney, however, stand on different footing. On the child’s cross-examination, defendant established that she was brought down to the station house at 10:00 p.m. one night about two weeks after the second incident. At midnight, she spoke to a detective and prosecutor and gave versions of the incidents that did not include allegations of rape. Later, on a separate occasion that night, the police and District Attorney accused the child of lying. She then stated, among other things, that defendant had rubbed his penis against her vagina. This latter statement could not be used for rehabilitation because it arose subsequent to the alleged influencing forces. Thus, the trial court erred in overruling defendant’s objection to this statement.[2]
The trial court similarly erred in refusing defendant’s request to strike a prior consistent statement brought out on Mary’s direct testimony. As the court correctly noted, the child had yet to be cross-examined, and thus any rehabilita *20 tion with consistent statements was premature. Nevertheless, the court declined to issue a curative instruction, reasoning that it would only highlight the statement. Having requested specific curative action, defendant could not have been heard to later complain that such relief was prejudicial. But by the same token, the court could not refuse defendant’s request on the ground that it would have been prejudicial to him.
IV.
Having found error in the admission of prior consistent statements, we must determine whether such errors were harmless.
To be convicted of either statutory or forcible rape, the People had to prove, beyond a reasonable doubt, that defendant had "sexual intercourse” with Mary (Penal Law §§ 130.35, 130.30). Sexual intercourse requires "penetration” (Penal Law § 130.00 [1]). Thus a critical issue, assuming the jury believed some form of sexual assault occurred, was whether defendant had penetrated Mary (as she testified at trial), or did no more than fondle her (as some of her statements indicated), which would have established only the lesser charges of sexual abuse.
In this case, no physical evidence connected defendant to a rape. The physician did not have Mary remove her clothes, and the child did not keep her follow-up appointment with the gynecologist. The February 10 rape conviction rested solely on Mary’s testimony, and it appears that testimony was at odds with earlier versions of the events. The evidence of intercourse on February 10 was thus far from overwhelming and we cannot conclude, therefore, that the errors were harmless (see, People v Crimmins, 36 NY2d 230, 241). Accordingly, a new trial on the February 10 charges is necessary.
The evidence of rape on February 17 was only marginally stronger. Linda Jones, the elderly boarder, did not witness the crime. Indeed, when she saw defendant, he was fully clothed. Apart from Mary, the only other eyewitness was her seven-year-old friend, who conceded that the room was dark. Even were we to conclude that the evidence with respect to February 17 was overwhelming — which we do not — a new trial is required on all counts. There is a significant factual relationship among the charges. In fact, the endangering the welfare of a child count encompassed both incidents.
*21 Defendant’s remaining contentions are either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Acting Chief Judge Simons and Judges Titone, Hancock, Jr., Bellacosa and Smith concur.
Order reversed, etc.

. All names are fictitious (see, Civil Rights Law § 50-b).

. Similarly, the Grand Jury testimony was inadmissible because it did not precede the alleged influences. However, the trial court sustained an objection to the statement — albeit on different grounds — and instructed the jury to disregard it. We therefore find no error in connection with this statement.