People v Troche (2018 NY Slip Op 01490)





People v Troche


2018 NY Slip Op 01490


Decided on March 7, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
L. PRISCILLA HALL
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2015-02768
 (Ind. No. 841-14)

[*1]The People of the State of New York, respondent,
v
Felix Troche, appellant.


Laurette D. Mulry, Riverhead, NY (Felice B. Milani of counsel), for appellant.
Timothy Sini, District Attorney, Riverhead, NY (Thomas C. Costello of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Barbara Kahn, J.), rendered March 10, 2015, convicting him of rape in the first degree, criminal sexual act in the first degree (three counts), sexual abuse in the first degree (two counts), assault in the second degree (two counts), unlawful imprisonment in the first degree, forcible touching (two counts), and assault in the third degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
The defendant was tried for rape in the first degree and various related offenses committed against the pregnant complainant at a house frequented by drug abusers. The complainant testified at length and in detail regarding the crimes, and numerous witnesses confirmed the defendant's violent and assaultive behavior toward the complainant on the night of the offenses and described the complainant as distraught, bloodied, and disheveled immediately following her encounter with him. Moreover, the prosecution presented forensic and medical evidence establishing that, despite the defendant's denials to the police that he had sex with the complainant, his semen was found on the complainant's underwear, and the physical injuries the complainant suffered were consistent with her account of the incident. In marked contrast, the defendant's counsel argued at trial that the defendant and the complainant had consensual sex. He supported this defense with the testimony of a friend of the defendant who stated that he had heard from someone that the complainant "was offering herself to other men that night," a second witness who asserted that after the defendant left the scene, she saw a woman outside the house "asking people for, you know, to give blow jobs for a ride," and the defendant's fiancée, who claimed that on the night of the incident, she observed the complainant offering "sexual favors for crack," but that the defendant had no contact with the complainant that night. The fiancée further testified that after his arrest, the defendant repeatedly assured her over a period of several months that he did not have sex with the complainant and that the police did not have his DNA. Nevertheless, the fiancée testified that "[in] the back of my mind I thought different." She additionally testified that the defendant had been out with a friend earlier on the date of the incident, but she did not know and "[was] not exactly sure" where he had been. None of the defense witnesses provided any evidence or explanation regarding how the defendant's semen came to be on the complainant's underwear. The jury returned a verdict [*2]convicting the defendant of all of the charged offenses.
Contrary to the defendant's contention, the County Court did not err in discharging a seated juror upon its finding, after a reasonable inquiry, that the juror would be unable to appear within two hours of the time set for trial to continue (see CPL 270.35[2][a]; People v Jeanty, 94 NY2d 507; People v Browne, 144 AD3d 834, 835; People v Walker, 141 AD3d 678, 678-679; People v Barksdale, 130 AD3d 746).
Similarly unavailing is the defendant's contention that the admission of evidence regarding his gang affiliation constituted reversible error. The defendant has failed to preserve for appellate review this challenge to the extent that he currently argues that the trial testimony on that matter exceeded the scope of the County Court's pretrial ruling (see CPL 470.05[2]; People v Brown, 139 AD3d 964, 965). In any event, while the admission of some of the evidence may have been improper, any such error was harmless, as there was overwhelming evidence of the defendant's guilt, and there was no significant probability that the jury would have acquitted the defendant had it not been for the error (see People v Crimmins, 36 NY2d 230, 242; People v Borgella, 144 AD3d 1048; People v Hollman, 98 AD3d 584).
Moreover, the County Court did not err in permitting the complainant's mother to testify with respect to the complainant's physical appearance immediately after the incident (see People v Shepherd, 83 AD3d 1298, 1300; People v Terrence, 205 AD2d 301, 302). In addition, the mother properly testified as to the prompt outcry made by the complainant at that time, and her testimony on that point did not exceed the level of detail permissible under the prompt outcry hearsay exception (see People v Tucker, 117 AD3d 1090; People v Bernardez, 63 AD3d 1174, 1175; People v Salazar, 234 AD2d 322). Furthermore, while the testimony of the mother as to the complainant's conversation with certain police officers was improper (see generally People v McDaniel, 81 NY2d 10, 17), as was the testimony of another witness regarding his conversation with the complainant in the days following the incident (see People v Barnes, 140 AD3d 443, 444), these errors were harmless, as there was overwhelming evidence of the defendant's guilt, and there was no significant probability that, absent the errors, the defendant would have been acquitted (see People v Caban, 126 AD3d 808, 809; People v Tucker, 117 AD3d at 1091). Additionally, the combined effect of all of the foregoing errors did not deprive the defendant of a fair trial. We note that the defendant waived any objection to the testimony of the mother regarding the complainant's statement to the effect that she was sexually assaulted by gang members, since it was the defense that elicited such testimony (see People v Honghirun, 133 AD3d 882, 883, affd 29 NY3d 284).
The defendant's claim that he was denied the effective assistance of trial counsel is without merit. The defendant failed to demonstrate that his trial counsel's decision not to call a certain witness who had already testified for the prosecution lacked a "legitimate," "strategic" basis (People v Rivera, 71 NY2d 705, 709; see People v King, 27 NY3d 147, 159). A review of the record as a whole establishes that the defendant was afforded meaningful representation (see People v Benevento, 91 NY2d 708, 712; People v Baldi, 54 NY2d 137, 147). Furthermore, trial counsel's strategic decision in this regard did not deny the defendant his right to confront an adverse witness (see generally People v Gibson, 106 AD3d 834; People v Rivera, 98 AD3d 529, 529).
The defendant has failed to preserve for appellate review his challenge to the legal sufficiency of the evidence (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484). In any event, contrary to his contention, there was ample evidence corroborating the accomplice testimony here (see CPL 60.22[1]; People v Reome, 15 NY3d 188, 195) and, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v West, 105 AD3d 781). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The sentence imposed was not excessive (see People v Suite, 90 AD2d 80).
MASTRO, J.P., MILLER and BRATHWAITE NELSON, JJ., concur.
HALL, J., dissents, and votes to reverse the judgment, on the law, and order a new trial, with the following memorandum:
On June 1, 2012, the complainant visited a house in which Kenneth Neu rented a room in order to smoke crack cocaine with Neu. There were many other people in the house that day. According to the complainant, while she was at the house, the defendant engaged in several sex acts with her by forcible compulsion. After a jury trial, the defendant was convicted of one count of rape in the first degree, three counts of criminal sexual act in the first degree, and lesser charges.
I agree with my colleagues in the majority that the evidence was legally sufficient to establish the defendant's guilt, and that the verdict was not against the weight of the evidence. However, I believe that a new trial is required based on certain evidentiary errors.
At the outset of the trial, the People sought to introduce evidence of the defendant's alleged gang affiliation, in order to explain: (1) the close relationship between the defendant and some of the People's cooperating witnesses and why those witnesses might have been reluctant to testify against him; (2) why people present in the house would allow the alleged crimes to take place and fail to report them to the police; and (3) why the complainant delayed reporting the alleged crimes to the police for approximately 36 hours. Over defense counsel's objection, the County Court granted the People's application, except that it stated that it would not permit evidence concerning "historical gang issues, hierarchy, etc., [but] merely [would permit evidence] that according to these cooperating witnesses [the defendant] was in . . . a superior position" in the gang. The People then proceeded to present extensive testimony from eight witnesses regarding the defendant's alleged gang affiliation, eliciting, among other things, that one of the witnesses became a member of the gang by performing a drive-by shooting. Only one of the eight witnesses testified that the defendant was in a superior position in the gang; that witness testified that the defendant had referred to himself as "third crown."
While the defendant did not preserve for appellate review his contention that the evidence presented exceeded the scope of the County Court's ruling, by opposing the application made by the People, he preserved his contention that the gang evidence should not have been admitted at all (see CPL 470.05[2]). I submit that under the circumstances of this case, the court erred in granting the People's application. The alleged crimes were not gang-motivated, and the limited probative value of the evidence was outweighed by the possible prejudice to the defendant (see People v Hollman, 98 AD3d 584, 585; People v Sellan, 143 AD2d 690, 691).
In addition, the County Court erroneously allowed testimony by Neu regarding a statement made to him by the complainant approximately a week after the incident, as the statement was insufficiently prompt to qualify under the prompt outcry exception to the hearsay rule and, moreover, the testimony went beyond the mere fact of the outcry (see People v McDaniel, 81 NY2d 10, 17; People v Rice, 75 NY2d 929, 932; People v Barnes, 140 AD3d 443, 444).
Unlike my colleagues in the majority, I cannot conclude that these errors were harmless. The prejudice resulting from the County Court's ruling on the admissibility of the gang evidence was substantial, as the People proceeded to present testimony from eight different witnesses regarding the defendant's alleged gang affiliation, including one witness who testified that he became a member of the gang by performing a drive-by shooting. Further, while semen found on the complainant's underclothing matched the defendant's DNA profile, the defendant asserted a defense of consent. This defense was based on the testimony of three witnesses who stated that, on the day of the alleged crimes, the complainant went around the house offering to perform sexual favors in exchange for crack cocaine or in exchange for a ride home. Although one of these [*3]witnesses, the defendant's fiancée, testified that she did not see the defendant have any contact with the complainant on the night of the alleged crimes, she further testified that she suspected that the defendant had had sex with the complainant earlier in the day, when she was not with the defendant. Moreover, the complainant admitted that she was high on crack cocaine on the date of the alleged crimes. Under these and all of the other circumstances of the case, I submit that the proof of the defendant's guilt was not overwhelming, and even if it were, there is a significant probability that the verdict would have been different if it had not been for the errors (see People v McDaniel, 81 NY2d at 20; People v Crimmins, 36 NY2d 230, 241-242).
Accordingly, I vote to reverse and order a new trial.
ENTER:
Aprilanne Agostino
Clerk of the Court