The People of the State of New York, Respondent,
against
Fernando Fonseca Carrasco, Appellant. 




Richard L. Herzfeld, for appellant.
Orange County District Attorney (William C. Ghee of counsel), for respondent.

Appeal from a judgment of the City Court of Newburgh, Orange County (E. Loren Williams, J.), rendered August 10, 2017. The judgment convicted defendant, upon a jury verdict, of assault in the third degree, menacing in the second degree, menacing in the third degree, attempted assault in the third degree and attempted coercion in the second degree, and imposed sentence.




ORDERED that the judgment of conviction is modified, on the law and in the interest of justice, by vacating the conviction of attempted assault in the third degree and vacating the sentence imposed thereon, and dismissing that count of the accusatory instrument; as so modified, the judgment of conviction is affirmed.
Defendant was convicted, following a jury trial, of assault in the third degree (Penal Law § 120.00 [1]), menacing in the second degree (Penal Law § 120.14 [1]), menacing in the third degree (Penal Law § 120.15), attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]) and attempted coercion in the second degree (Penal Law §§ 110.00, 135.60 [1]).
At the trial, the complainant, defendant's ex-girlfriend, testified through a court interpreter, that, beginning on December 9, 2016, after she and defendant had been dating for a few months, defendant became violent and threatening. That day, the two argued and the complainant accused defendant of being a liar. Defendant punched her repeatedly and bit her face as she cried. The complainant took photographs of her injured face the next day, after [*2]defendant returned her cell phone that he had taken from her during the attack. She also memorialized the incident by making the notation "Abuse" in her cell phone calendar under the December 9, 2016 date, a photograph of which was admitted into evidence during her direct examination, over defense counsel's objection.
The complainant also testified about an incident on December 20, 2016, when defendant became irate after the complainant's eight-year-old daughter had received a telephone call from an uncle who had asked if defendant was with her. Defendant yelled at the complainant and her daughter, causing the young girl to cry and run into her bedroom. The complainant followed her daughter, "told her not to cry, that everything is okay." She also told her daughter that "if she were to hear me screaming to call the police." The complainant then went into the kitchen. While she was cooking, defendant came into the kitchen, grabbed a knife, pointed it at her and said if her daughter calls the police, he would kill them both.
In February 2017, the complainant took her daughter to Puerto Rico, as "I was trying to pull away from [defendant] because he stole some things from my house." The trial court sustained defense counsel's objection to the portion of the statement concerning stealing as a violation of its pretrial Molineux ruling. However, the complainant was allowed to testify that, while in Puerto Rico, she recovered her laptop computer and jewelry, and her daughter's tablet, from defendant's sister's house. After returning to Newburgh, NY on March 8, 2017, the complainant went to the police station and made a complaint against defendant. This was the first time that the complainant reported defendant to the police.
The complainant's eight-year-old daughter also testified, but first a swearability hearing was held. During the hearing, she demonstrated her knowledge of the difference between the truth and a lie, and between reality and fantasy. At one point, the trial court asked the complainant's daughter, "even if you think somebody is going to be mad at you [or] if you thought your mom was going to be upset with you because you told the truth on a particular event—would that stop you from telling the truth?" She answered, "No." The trial court also explained that, in taking an oath "you make a promise to . . . tell the truth, alright. And you know adults, we take that very serious. Alright, do you understand how serious that is?" She responded, "Yes."
At the trial, the complainant's daughter testified that she was afraid of defendant, whom she described as a "scary" man who "lived with my mom and me." She then testified about the time defendant became angry when her uncle had called her. Defendant was "yelling at me and mom." This caused her to feel "[s]cared and nervous," and to cry because "I didn't like the way he was speaking to me and my mom."
Police Officer Anthony Tejada testified briefly, explaining that, after meeting with the complainant two to three times, he filed formal charges against defendant. He did not repeat any of the complainant's specific allegations against defendant. He stated that he had never met defendant and had no independent knowledge concerning defendant's relationship or interactions [*3]with the complainant and her daughter.
The defense rested without putting forth an affirmative case. Defense counsel argued in his summation that the prosecution wanted the jury to be "saviors instead of jurors," which is why the prosecution began its examination of the complainant by asking for her current address, which she refused to disclose for fear that defendant might find her. "I would submit to you," defense counsel argued, "even though they didn't get the address or zip code, they got the answer they wanted, the effect they wanted, the theatrical effect."
During her summation, the prosecutor accused defendant of treating the trial as "a theater and circus and entertainment. But, let's show him that we've all taken our roles very seriously, because this has affected, not just the life of two people, a child and a woman. This affects us all." Defense counsel's objection was sustained by the City Court. The prosecutor continued, telling the jury "Let's collectively tell this defendant that we will not accept this treatment of another human being this way in our city." Defense counsel did not object to this comment.
Of the 10 counts presented, the jury convicted defendant of five.
On appeal, defendant argues that he is entitled to a reversal of his convictions and remand for a new trial under multiple theories. First, he asserts that the court interpreter provided "inadequate interpretation" that implicated his due process and fair trial rights. This argument is not preserved, and we decline to address it in the interest of justice. Were we to reach the issue, we would reject defendant's argument, which is based upon the prosecutor's expressed concern during trial that a Spanish word spoken by the complainant was mistranslated as "lying" when it should have been "faking." However, it was never determined definitively whether the translation was in fact erroneous. Further, assuming arguendo that the translation was incorrect, these two words are synonymous enough to not confuse the jury. Thus, the alleged inadequacy of the interpreter's translation of complainant's trial testimony did not constitute such "serious error in translation . . . that would warrant a reversal" (People v Noor, 302 AD2d 480, 480 [2003]; see also People v DaCosta, 31 Misc 3d 142[A], 2011 NY Slip Op 50832[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2011]).
Defendant's argument that the testimony of the police officer who met with the complainant and filed formal charges against defendant based solely on the complainant's allegations constituted impermissible bolstering is also not preserved, and we decline to address it in the interest of justice. In any event, this argument, too, is without merit. The officer did not repeat any of the complainant's specific allegations against defendant, and he made clear that he was unaware of any factual information beyond the allegations made by the complainant.
The City Court, however, erred in permitting the complainant's eight-year-old daughter to testify under oath. "A witness less than nine years old may not testify under oath unless the court is satisfied that he or she understands the nature of an oath" (CPL 60.20 [2]). "A witness understands the nature of an oath if he or she appreciates the difference between truth and [*4]falsehood, the necessity for telling the truth, and the fact that a witness who testifies falsely may be punished" (CPL 60.20 [2] [emphasis added]). Here, the court's inquiry failed to elicit whether the complainant's daughter "appreciate[d] . . . the fact that a witness who testifies falsely may be punished" (CPL 60.20 [2]; see People v Ranum, 122 AD2d 959, 960 [1986]), and so it did not establish that she understood the nature of an oath. However, the error in permitting the witness to testify under oath was harmless, as the record demonstrates that she "could properly have been permitted to testify as an unsworn witness (see CPL 60.20 [2]), and[] because her testimony was sufficiently corroborated by other evidence" (People v McIver, 15 AD3d 677, 678 [2005]).
Also, the City Court erroneously allowed admission, during the prosecution's direct examination of the complainant, of the photograph of her cell phone calendar in which she chronicled the word "Abuse" (see People v Watson, 163 AD3d 855, 863-866 [2018], citing People v McDaniel, 81 NY2d 10, 18-20 [1993]; People v Goodluck, 117 AD3d 653, 654 [2014], citing People v Reynoso, 73 NY2d 816, 819 [1988]). Additionally, the trial prosecutor's comments during summation that defendant treated the trial like "theater and circus and entertainment," defendant's actions affect "all of us" and the jury should "tell this defendant that we will not accept this treatment of another human being this way in our city"— the first two of which were objected to successfully by defense counsel—were improper and meant to "appeal to the sympathy of the jury" (People v Mohammed, 81 AD3d 983, 984 [2011]).
Nevertheless, these errors, considered on the whole, were harmless beyond a reasonable doubt when weighed against the complainant's and her daughter's credible testimony, supported by photographic evidence, as " 'the evidence of guilt, without reference to the error[s], is overwhelming, and there is no reasonable possibility that the error[s] might have contributed to . . . defendant's conviction' " (People v Thompson, 111 AD3d 56, 67 [2013], quoting People v Dunbar, 104 AD3d 198, 214-215 [2013]).
However, as defendant was convicted of assault in the third degree based upon the December 9th incident, this court elects, as a matter of discretion in the interest of justice, to vacate his conviction of attempted assault in the third degree based upon the same incident, "notwithstanding the fact that defendant did not raise this issue at trial and does not raise it on appeal," as a " 'verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted' " (People v Payne, 54 Misc 3d 138[A], 2017 NY Slip Op 50140[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017], quoting CPL 300.40 [3] [b]; see People v Valery, 135 AD3d 975, 976 [2016]).
Accordingly, the judgment of conviction is modified by vacating the conviction of attempted assault in the third degree and the sentence imposed thereon, and dismissing that count of the accusatory instrument.
TOLBERT, J.P., RUDERMAN and EMERSON, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: August 01, 2019