People v Hamilton (2019 NY Slip Op 07814)





People v Hamilton


2019 NY Slip Op 07814


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

109737

[*1]The People of the State of New York, Respondent,
v
Jeremiah Hamilton, Also Known as Kellan Brown and Havoc, Appellant.

Calendar Date: September 11, 2019

Before: Egan Jr., J.P., Lynch, Mulvey and Devine, JJ.


Matthew C. Hug, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Devine, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered October 3, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of murder in the second degree, attempted murder in the second degree, criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the first degree.
In September 2008, the victim was shot and killed while attempting to settle a dispute between defendant and Victor Toomer. Defendant was identified as the shooter and indicted on various charges. Following a jury trial in 2012, defendant was convicted of murder in the second degree, attempted murder in the second degree, criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the first degree. Upon his appeal, we reversed and remitted for a new trial (127 AD3d 1243, 1247-1248 [2015], lvs denied 25 NY3d 1164 [2015]). The retrial occurred in 2016 and ended with a jury again convicting defendant of those crimes. Supreme Court sentenced defendant to 25 years to life in prison upon the conviction for murder in the second degree, 25 years in prison to be followed by five years of postrelease supervision upon the conviction for attempted murder in the second degree and 3&frac13; to 7 years in prison upon the conviction for reckless endangerment in the first degree, those sentences to run consecutively. The sentences upon the remaining convictions were made to run concurrently and do not affect the overall term of imprisonment. Defendant appeals.
We affirm. Defendant's contentions that the verdict was not supported by legally sufficient proof and was against the weight of the evidence are meritless. The trial evidence included testimony from multiple eyewitnesses, some involved in the events leading up to the shooting and some not, as well as individuals who had firsthand knowledge of defendant's activities on the night in question or later spoke to him about the incident. This testimony revealed how defendant argued with and punched Toomer as the two were playing dice in the street. Defendant ran away from Toomer and several others who pursued him, sought a gun, obtained one from a man who testified at trial about the encounter and returned to the scene with the victim. Toomer and others were still in the area and the victim, who knew Toomer and wanted to resolve the dispute, spoke to Toomer while defendant paced across the street. Defendant then, without provocation, fired several shots in the direction of the victim, Toomer and others, one of which fatally struck the victim in the head. He returned the gun to its owner, from whom it was recovered a few days later, and testing revealed that the fatal bullet had been fired from it. Defendant further indicated that he was the shooter in conversations with multiple witnesses and told one, a fellow inmate, that he was "trying to handle his business" and that the victim had gotten "in the way." This proof, when viewed in the light most favorable to the People, was legally sufficient to support the verdict in all respects (see People v Hamilton, 127 AD3d at 1244-1245; see also People v Miller, 118 AD3d 1127, 1129 [2014], lv denied 24 NY3d 1086 [2014]; People v Culpepper, 118 AD2d 866, 866 [1986], lvs denied 68 NY2d 667 [1986]). Moreover, viewing the evidence in a neutral light and according deference to the jury's determination that the People's witnesses were credible, notwithstanding defendant's efforts to call their accounts into question, we do not find the verdict to be against the weight of the evidence (see People v Cruz, 154 AD3d 429, 429 [2017], lvs denied 30 NY3d 1059 [2017], 33 NY3d 1030 [2019]; People v Casseus, 120 AD3d 828, 829 [2014]; People v Miller, 118 AD3d at 1129).
Defendant next argues that Supreme Court should have granted his application for a mistrial after a prosecution witness testified that defendant was "on the run" at the time of the shooting because he had "merked somebody" in New York City. This information exceeded the bounds of a Molineux ruling, not included in the record, that apparently allowed the People to establish that defendant was wanted by the authorities in New York City for unspecified reasons. The violation was an isolated one that did not appear to be deliberate, however, and there is no indication that the jury knew what the slang term "merked" meant.[FN1] Supreme Court further ameliorated any prejudice to defendant by immediately striking the testimony and, following arguments on his application for a mistrial, administering a proper curative instruction to the jury (cf. People v Nicholas, 130 AD3d 1314, 1317 [2015]). Defendant was not deprived of a fair trial under these circumstances, and Supreme Court did not abuse its discretion in declining to declare a mistrial (see People v Turcotte, 124 AD3d 1082, 1083-1084 [2015], lv denied 25 NY3d 1078 [2015]; People v White, 79 AD3d 1460, 1463 [2010], lvs denied 17 NY3d 791, 803 [2011]; People v Delaney, 42 AD3d 820, 822 [2007], lv denied 9 NY3d 922 [2007]).
Contrary to defendant's further contention, reversal is not required due to the People's use of the prior consistent statements of three prosecution witnesses. A witness's prior consistent statement cannot be used for bolstering purposes, but is available to, as is relevant here, rebut charges of recent fabrication where the statement "predated the motive to falsify" (People v McDaniel, 81 NY2d 10, 18 [1993]; see People v Honghirun, 29 NY3d 284, 289 [2017]; People v Davis, 44 NY2d 269, 277 [1978]). Toomer testified as to what transpired and defendant's role in it, but was himself imprisoned on unrelated charges, had entered into a plea agreement requiring him to testify at defendant's first trial and expected the People to assist him on various matters as a result of his testimony at the second. He was cross-examined extensively about his initial statements to authorities that he was not present at the time of the shooting, his cooperation with the People and the benefits that he hoped to obtain by testifying at the retrial, the inference being that Toomer was motivated by his legal troubles to lie about what had occurred. Supreme Court properly allowed the People to rehabilitate Toomer by questioning him about consistent statements he made to the victim's family soon after the shooting occurred, then properly instructed the jury as to the use of those statements (see People v Mirenda, 23 NY2d 439, 451-452 [1969]; People v Burton, 159 AD3d 550, 551 [2018], lv denied 31 NY3d 1115 [2018]; People v Flowers, 83 AD3d 524, 524-525 [2011], lv denied 17 NY3d 795 [2011], cert denied 565 US 1017 [2011]).
A second use of a prior consistent statement related to the fellow inmate's varying descriptions of the gesture made by defendant when he spoke about the shooting, while a third related to a witness's testimony that defendant had told her of his involvement in the shooting despite her initially telling investigators that she lacked knowledge about it. It is questionable whether either witness was cross-examined on those inconsistencies with the aim of inferring a recent motive to fabricate as opposed to mere impeachment and, moreover, debatable whether the prior consistent statements predated the motivation of either witness to lie (see People v McDaniel, 81 NY2d at 18; People v McClean, 69 NY2d 426, 428 [1987]). Assuming without deciding that these prior consistent statements were admitted in error, however, the errors were harmless in view of "the overwhelming evidence of guilt, and because 'prior consistent statements are notably less prejudicial to the opposing party than other forms of hearsay, since by definition the maker of the statement has said the same thing in court as out of it, and so credibility can be tested through cross-examination'" (People v Figueroa, 171 AD3d 549, 550 [2019], lv denied 33 NY3d 1104 [2019], quoting People v Ludwig, 24 NY3d 221, 230 [2014]; see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Darmetko, 56 AD2d 678, 679 [1977]).
Defendant also complains that he lacked the effective assistance of counsel, pointing to two supposed failings on the part of defense counsel. First, the People demonstrated that a potential witness was in the custody of federal officials, who rebuffed requests to produce him for the trial and proceedings in another matter, and that individual was "neither available to the People nor under their control" as a result (People v Sealy, 35 AD3d 510, 510 [2006], lv denied 8 NY3d 884 [2007]; see also People v Savinon, 100 NY2d 192, 198 n 5 [2003]). Defense counsel cannot be faulted for failing to pursue a missing witness charge that stood "little or no chance of success" given that showing, particularly absent any indication that the witness would have provided noncumulative testimony (People v Caban, 5 NY3d 143, 152 [2005]; see People v Kindred, 100 AD3d 1038, 1041 [2012], lv denied 21 NY3d 913 [2013]). Second, the gun identified as the murder weapon was mistakenly destroyed by a police officer before the retrial and, were we to assume that defendant sought the production of that weapon, he would have been entitled to an adverse inference charge regarding its absence upon request (see People v Viruet, 29 NY3d 527, 532 [2017]; People v Handy, 20 NY3d 663, 665 [2013]). That said, defense counsel may well have decided to forgo a charge that had no connection to the primary defense claim that defendant was not involved with the shooting at all, and any error "was not so egregious or prejudicial as to warrant a finding of ineffective assistance" (People v Poirier, 126 AD3d 420, 421 [2015], lv denied 26 NY3d 1042 [2015]; see People v Blake, 24 NY3d 78, 81-84 [2014]; People v Kluss, 143 AD3d 1281, 1282 [2016], lv denied 28 NY3d 1147 [2017]). Defendant alleges no other deficient conduct and, having reviewed "the evidence, the law, and the circumstances of [this] case" in its entirety, we are satisfied that he received "meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]).
Finally, defendant's complaints regarding the jury charge are partially unpreserved and, insofar as they are preserved, are unavailing. Supreme Court charged the jury on the doctrine of transferred intent with regard to the count of intentional murder in the second degree (see Penal Law § 125.25 [1]) and properly declined to name the intended target as part of it (see People v Wells, 7 NY3d 51, 56-57 [2006]; People v Harris, 115 AD3d 761, 762 [2014], lv denied 23 NY3d 1062 [2014]). Thereafter, in responding to a jury request to repeat the charge, Supreme Court "conveyed the proper legal standards" by clarifying that the intended target could have been the victim as well as another individual (People v Simmons, 15 NY3d 728, 729 [2010]; see People v Jeffrey, 164 AD3d 604, 605 [2018], lv denied 32 NY3d 1065 [2018]; see also CJI2d[NY] Penal Law § 125.25 [1]). Defendant's remaining arguments, to the extent not addressed above, have been examined and lack merit.
Egan Jr., J.P., Lynch and Mulvey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defense counsel founded his application for a mistrial upon the witness's use of the term "merked." Supreme Court stated that it had misheard the witness as saying "murdered," but explained that it was not able to see or hear the witness well because he was facing the jury. Defendant did not request any inquiry to determine if the jurors also misheard the witness or move for a mistrial on the assumption that they had, leaving unpreserved his attempt to raise that issue on appeal (see CPL 470.05 [2]; People v Stephans, 168 AD3d 990, 999 [2019]; People v Guzy, 167 AD3d 1230, 1236 [2018], lv denied 33 NY3d 948 [2019]).