People v Ulloa-Flores (2025 NY Slip Op 50494(U))

[*1]

People v Ulloa-Flores (Moises)

2025 NY Slip Op 50494(U)

Decided on April 3, 2025

Appellate Term, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 3, 2025
SUPREME COURT, APPELLATE TERM, SECOND DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : JERRY GARGUILO, P.J., TIMOTHY S. DRISCOLL, ELENA GOLDBERG-VELAZQUEZ, JJ

2023-108 S CR

The People of the State of New York, Respondent,
against
Moises Ulloa-Flores, Appellant. 

Suffolk County Legal Aid Society (Genevieve M. Cahill of counsel), for appellant.
Suffolk County District Attorney (Kim Marie Carson and Marion Tang of counsel), for respondent.

Appeal from judgments of the District Court of Suffolk County, First District (Rosann O. Orlando, J.), rendered January 23, 2023. The judgments convicted defendant, upon jury verdicts, of forcible touching and sexual abuse in the third degree, respectively, and imposed sentences.

ORDERED that the judgments of conviction are affirmed.
At a jury trial, the testimony indicated that, on September 5, 2021, defendant was a patient at Huntington Hospital receiving treatment for intoxication and blood in his vomit. His blood, taken at 10:35 a.m., returned a blood alcohol content of .31 percent. At around noon, while in a bathroom, he touched and squeezed the breasts of a nurse who had escorted him there. He also exposed and stroked himself before rubbing his penis across the nurse's thigh and stomach. Defendant pursued the nurse as she kept stepping back, putting her hands up, and saying "stop." Following the trial, defendant was convicted of forcible touching (Penal Law § 130.52 [1]) and sexual abuse in the third degree (Penal Law § 130.55).
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15; People v Danielson, 9 NY3d 342, 348 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Lane, 7 NY3d 888, 890 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the guilty verdicts were [*2]not against the weight of the evidence (see People v Romero, 7 NY3d 633, 643-644 [2006]).
At trial, while the nurse victim was testifying about what a surveillance video, which had been admitted into evidence, was depicting, she revealed, to both parties' surprise, that the video captured the moments she gave outcries to another nurse, Buda, and a secretary, Smith. Defense counsel also elicited that the victim had never told the police about these two individuals. During a break in the nurse's testimony, defense counsel moved to invalidate the People's certificates of compliance (COC) on the ground that the People had failed to disclose the contact information for Buda and Smith, and to dismiss the accusatory instrument on statutory speedy trial grounds. Defense counsel contended that the People failed to exercise due diligence in not interviewing the nurse about the two individuals captured in the video. A hearing was held during which it was uncontested that the People turned over a recording of a 911 call and corresponding paperwork with their first COC and statement of readiness (SOR) on October 12, 2021. It was also uncontested that the People turned over the hospital's surveillance video with their supplemental COC on November 24, 2021. At the hearing, the People admitted that they erroneously left Buda's name off the list of individuals with relevant information under CPL 245.20 (1) (c) but argued that they turned over Buda's contact information because it was captured in the 911 call and corresponding paperwork. As for Smith, the People maintained that they never knew of Smith after multiple interviews with all the testifying witnesses and combing through all the police paperwork. They also explained that, after interviewing Smith in the wake of the victim's testimony, Smith could not recall anything about the conversation or events stemming from defendant's conduct. The District Court upheld the validity of the People's COCs and SOR, and denied defendant's motion.
When the People have not filed an SOR before January 1, 2020 (see People v King, 42 NY3d 424, 427-428 [2024]), absent an individualized finding of special circumstances, the filing of a proper COC is a prerequisite to the People being ready for trial under CPL 30.30 (5) (see CPL 245.20, 245.50 [3]; People v Bay, 41 NY3d 200, 207-210 [2023]). The People are required to provide defendant with "all items and information that relate to the subject matter of the case" (CPL 245.20 [1]) that are in the People's possession (see CPL 245.20 [2]). CPL 245.20 (1) (c) requires the People to disclose "[t]he names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto" and, if the People choose to not give a 911 caller's contact information, they must noitfy the defendant in writing that they have not turned over that information (see also CPL 245.20 [1] [g] [allowing People to withhold contact information of 911 caller without a protective order]). CPL 245.20 (1) (g) requires the People to turn over all tapes or electronic recordings, "including all electronic recordings of 911 telephone calls made or received in connection with the alleged criminal incident." Even so, CPL 245.20 (2) provides that "[t]his subdivision shall not require the prosecutor to ascertain the existence of witnesses not known to the police or another law enforcement agency, or the written or recorded statements thereof, under paragraph (c) or (e) of subdivision one of this section."
Criminal Procedure Law article 245 does not create a "rule of strict liability" or require a "perfect prosecutor" (Bay, 41 NY3d at 212 [internal quotation marks omitted]). "[T]he key question in determining if a proper COC has been filed is whether the prosecution has [*3]'exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (id. at 211, quoting CPL 245.50 [1]; see also CPL 245.20 [2]). "Although the statute nowhere defines 'due diligence,' it is a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives" (Bay, 41 NY3d at 211, quoting People v Bolden, 81 NY2d 146, 155 [1993]).
If a defendant brings a CPL 30.30 motion claiming that "the People failed to exercise due diligence and therefore improperly filed a COC, the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay, 41 NY3d at 213). "If the prosecution fails to make such a showing, the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed" (id.). Moreover, "a defendant need not demonstrate prejudice [pursuant to CPL 245.80] to obtain speedy trial dismissal based on a failure to timely comply with discovery obligations" (id. at 213-214). Although an analysis of "whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case specific," courts should consider, among other things, the following:
"the efforts made by the prosecution . . . to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212).
Here, the record establishes that the People acted with due diligence and good faith when filing their COC. Though they mistakenly left Buda's name off the list of people with relevant information, the People did turn over the contact information for Buda as early as October 12, 2021. Thus, the People's failure to list the same does not render their COC invalid. As for Smith, the record establishes not only that she was unknown to the police and the People, but also that she did not have any relevant information about the crime. Therefore, the People had no duty to seek her out (see CPL 245.20 [2]) or disclose her contact information. Consequently, the People satisfied their burden of exercising good faith and due diligence under these circumstances (see People v Deas, 226 AD3d 823, 826 [2024]; People v Williams, 224 AD3d 998, 1006-1007 [2024]).
The People charged defendant with forcible touching, a class A misdemeanor, requiring the People to be ready within 90 days of the case's commencement (see Penal Law § 130.52; CPL 30.30 [1] [b]; see also People v Labate, 42 NY3d 184, 188 [2024]). The action commenced on or about September 5, 2021 with the People's filing of the accusatory instruments. The People validly stated ready less than 90 days later when they filed their first COC, SOR, and CPL 30.30 (5-a) statement on October 12, 2021. Therefore, the court correctly denied defendant's speedy trial motion. We note that, as it has not been raised, we need not reach the issue of whether, under the particular circumstances here, the District Court even had the inherent or statutory authority to dismiss the accusatory instrument in the middle of trial on this ground (see generally CPL 30.30, 170.30 [1] [e], [2]; Deas, 226 AD3d at 826-827).
The District Court did not improvidently exercise its discretion in denying defendant's request for a missing witness charge. The People established that Buda and Smith were not [*4]within their control (see People v Euceda, 216 AD3d 666, 666-667 [2023]; People v Montello, 197 AD3d 575, 577 [2021]; People v Molina, 188 AD3d 920, 922 [2020] ["The People established that the victim's brother was not under their control and would not have provided material testimony favorable to the prosecution"]; People v Roseboro, 127 AD3d 998, 899 [2015] [the victim's roommate, named on the People's witness list, who had given a statement to the police, was not under the control of the People]). Similarly, the People established that Smith had no knowledge of any material fact (see People v Chedick, 246 AD2d 551, 551-552 [1998] [the court properly denied a missing witness charge where the People demonstrated that the uncalled witness had no knowledge of the issue]). In any event, any error was harmless because defense counsel argued to the jury that it should consider the People's failure to call the witnesses and that it could draw a negative inference in doing so (see People v Williams, 5 NY3d 732, 734 [2005]; People v Gomez, 223 AD3d 843, 844 [2024]; People v Williams, 52 Misc 3d 141[A], 2016 NY Slip Op 51171[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]). 
Defendant's contention that certain testimony from the victim's supervisor fell outside the prompt outcry exception to the hearsay rule lacks merit. As a general rule, " 'evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place' " (People v Rosario, 17 NY3d 501, 511 [2011], quoting People v McDaniel, 81 NY2d 10, 16 [1993]; see People v Chin, 205 AD3d 819, 820 [2022]). A victim's outcry is prompt if it is made " 'at the first suitable opportunity' " (McDaniel, 81 NY2d at 17, quoting People v O'Sullivan, 104 NY 481, 486 [1887]), which is "a relative concept dependent on the facts" (McDaniel, 81 NY2d at 17), so that "what might qualify as prompt in one case might not in another" (id.; see Rosario, 17 NY3d at 512-513; Chin, 205 AD3d at 820). Here, the nurse's outcry to her supervisor was prompt since she made it minutes after the incident occurred despite pausing to tell her coworkers what had happened and documenting the same in defendant's patient chart (see Rosario, 17 NY3d at 515; Chin, 205 AD3d at 820).
The supervisor's testimony that the victim reported that she was "inappropriately touched" in the bathroom did not exceed the allowable level of detail (see also McDaniel, 81 NY2d at 18; People v Gross, 172 AD3d 741, 744 [2019]; People v Zuniga, 149 AD3d 660, 661 [2017]; People v Garrison, 103 AD3d 751, 752 [2013]; People v Farwell, 26 Misc 3d 26, 30 [App Term, 2d Dept, 9th & 10th Jud Dists 2009]). Even if it had, defendant waived his challenge to the supervisor's testimony because counsel elicited even more detail from the victim about her statement to the police and argued to the jury that it should discredit the victim's testimony based on alleged inconsistencies (see People v Bryan, 50 AD3d 1049, 1050-1051 [2008] ["The defendant also waived these contentions because defense counsel elicited similar testimony from the police officers on cross-examination and argued during summation that the complainant's description testimony was not credible"]). In any event, upon this record, there is no significant probability that the jury would have acquitted defendant had the supervisor's testimony about the victim's prompt outcry been excluded (see Rosario, 17 NY3d at 515; see also People v Mairena, 34 NY3d 473, 485 [2019]; People v Crimmins, 36 NY2d 230, 242 [1975]; Farwell, 26 Misc 3d at 31).
Accordingly, the judgments of conviction are affirmed.
GARGUILO, P.J., DRISCOLL and GOLDBERG-VELAZQUEZ, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 3, 2025